685 So.2d 405 (1996)
Agnes LIVINGS, PlaintiffAppellant,
v.
LANGSTON COMPANIES, INC./CONTINENTAL BAG DIVISION and Insurance Company of North America, DefendantsAppellees,
No. 96-636.
Court of Appeal of Louisiana, Third Circuit.
December 5, 1996.
*407 Michael Benny Miller, Crowley, for Agnes Livings.
Lelia Anne Collier, Lafayette, for Langston Companies, Inc.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
THIBODEAUX, Judge.
Plaintiff, Agnes Livings, appeals a judgment of the Office of Workers' Compensation in favor of her employer, Langston Companies, Inc.-Continental Bag Division and its insurer, Cigna Insurance Co., which denied her supplemental earnings benefits. The hearing officer terminated temporary total disability benefits and concluded that, because the claimant refused a reasonable offer of employment, she was not entitled to supplemental earnings benefits (SEB). Ms. Livings was awarded penalties and attorney's fees for the employer's failure to timely pay indemnity benefits.
For the following reasons, we affirm in part, reverse in part and amend the judgment. We award SEB and additional penalties and increase the attorney's fees from $1,500.00 to $7,500.00.

I.

ISSUES
The issues presented in this appeal are the following:

*408 (1) whether Ms. Livings is entitled to penalties pursuant to La.R.S. 23:1125 due to Cigna's failure to respond to a written request for her medical records;
(2) whether the hearing officer erred in failing to assign penalties under La. R.S. 23:1201(E) for its arbitrary and capricious handling of Livings' claim;
(3) whether Ms. Livings' compensation payments were improperly terminated between August 29, 1992 to March 11, 1993;
(4) whether there was a basis for Cigna's refusal to guarantee medical treatment from Dr. Cobb;
(5) whether physical therapy was properly terminated;
(6) whether Ms. Livings is entitled to supplemental earnings benefits under La. R.S. 23:1221 et seq.; and
(7) whether the hearing officer's award of attorney's fees is adequate.

II.

FACTS
On May 11, 1992, Agnes Livings sustained an injury in the course and scope of her employment. She injured her back as a result of tripping and falling on a trip lock near her work station at Langston Companies-Continental Bag Division. Shortly after the accident, Ms. Livings reported it to a supervisor and to the manager on duty, Kate Mills. That same day, Mills sent Ms. Livings to Dr. Neal Duhon for an examination. In addition to Dr. Duhon, Ms. Livings subsequently saw Drs. Ronald Menard and John Cobb. Langston's insurer, Cigna Insurance Co., handled the claim.
Langston and Cigna commenced indemnity payments on July 24, 1992. Those benefits were terminated from August 29, 1992 to March 11, 1993.
On August 6, 1992, Ms. Livings, through her attorney, made a written request upon Cigna for copies of its medical records. Cigna did not respond until September 29, 1992. Cigna similarly delayed its response to Ms. Livings' request for authorization for treatment by Dr. Cobb. Ms. Livings made the request on August 10, 1992 but did not receive authorization until approximately one year later. Additionally, Cigna and Langston terminated Ms. Livings' physical therapy treatments.
On January 25, 1993, Ms. Livings' attorney filed a claim against Langston and Cigna with the Office of Workers' Compensation Administration. Defendants hired Carthy McMahon Wilson, a vocational rehabilitation counselor, in April of 1995 to work on Ms. Livings' file. Wilson never personally contacted Ms. Livings, but did, however, meet with Ms. Livings' treating physician, Dr. Cobb, in order to obtain medical information on her client. That meeting and the ensuing compilation of information were accomplished through the use of a medical authorization provided by defendants, not by Ms. Livings. The claimant was completely uninformed and unaware of Wilson's activities or even of her existence.
The first contact Wilson had with Ms. Livings' attorney was in a letter he received on February 12, 1996. In that letter, Wilson stated that she had found two possible job opportunities with Langston. Ms. Livings' attorney responded to Wilson's communication as requested, but his February 13, 1996 response and request for more information went unanswered. No job offer was ever extended to Ms. Livings.
A hearing was conducted on March 6, 1996 and a judgment was entered on May 2, 1996. In her written reasons for judgment, the hearing officer concluded that Ms. Livings was no longer entitled to temporary total disability benefits and had failed to meet her burden of proving she was unable to engage in any employment due to physical pain associated with her injury. The hearing officer indicated that she relied in large part on the vocational rehabilitation counselor's findings. She further stated that Ms. Livings was ineligible for supplemental earnings benefits because she refused a reasonable offer of employment. Although Langston was found to be arbitrary and capricious in its handling of Ms. Livings' claim, no penalties were assigned. An attorney's fee award of $1,500.00 was, however, awarded.

*409 III.

LAW AND ARGUMENT

Failure to Provide Requested Medical Reports
Ms. Livings argues that she is entitled to penalties pursuant to La.R.S. 23:1125 due to Cigna's failure to respond to a written request for her medical records. The statute states in pertinent part that an employee "shall be entitled to a copy of the written report of the results of said examination within thirty days from the date of the written demand upon the employer for such report." Furthermore, the statute provides a penalty of $250.00 and a reasonable attorney's fee for its collection.
Our supreme court recently addressed this issue in Daugherty v. Domino's Pizza, 95-1394 (La.05/21/96); 674 So.2d 947. In that case, the employee's requests for medical records went ignored and the employer did not justify its refusal to comply. The court stated that an employer's failure to comply with La.R.S. 23:1125 by providing medical records within thirty days of an employee's written request rendered the employer liable to the employee for a civil penalty in the amount of $250.00 and a reasonable attorney's fee for its collection. Id. Furthermore, it stated that the lower courts' denial of the penalty and attorney's fees was manifest error. Id.
In a letter to Cigna dated August 6, 1992, Ms. Livings' attorney requested copies of medical records related to the May 11, 1992 accident. The record indicates that the adjuster for Cigna received the written request on August 10, 1992, but did not provide the medical reports until September 29, 1992, nearly fifty days later. Defendant Langston asserts that the statute is not applicable because Ms. Livings was not referred to Dr. Duhon by either the company or its insurer. The record indicates, and attorney for defendants conceded at oral arguments, however, that Kate Mills, an employee of Langston, sent Ms. Livings to Dr. Duhon the very day the accident occurred. Such unjustified behavior violates La.R.S. 23:1125 which sets forth a thirty day response period, thus, warranting the assignment of the $250.00 penalty and a reasonable attorney's fee for the collection of the penalty.
We note that the final judgment fails to address the issue of the La.R.S. 23:1125 penalty although Ms. Livings' attorney indicated in the pre-trial questionnaire that it was an issue for trial. This court recently held in Danzey v. Evergreen Presbyterian Ministries, 95-167 (La.App. 3 Cir. 6/7/95); 657 So.2d 491, that a written judgment silent as to an issue was to be construed as a rejection of the relief requested on that issue. The hearing officer's failure to address the issue of the La.R.S. 23:1125 penalty in the final written judgment is, therefore, considered a denial of the claimant's request for a penalty. The record supports a finding, however, that penalties and attorney fees are called for in this case due to Cigna's inexcusable failure to comply with Ms. Livings' request. Accordingly, we reverse the Office of Workers' Compensation judgment on this issue.

Failure to Assign Penalties
The hearing officer held Langston to have been arbitrary and capricious in handling Ms. Livings' claim and appropriately assigned attorney's fees. Nevertheless, the hearing officer did not award penalties which are set forth in La.R.S. 23:1201(E). That statute, now amended as section 1201(F), stated:
If any installment of compensation payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation.
The hearing officer noted in the reasons for judgment that Langston did not commence the indemnity payments until July 24, 1992, over two months after the accident and well beyond the fourteen day deadline set by La.R.S. 23:1201(B). A workers' compensation claimant is entitled to penalties and attorney's fees when an employer acts arbitrarily and capriciously in either terminating or withholding benefits without *410 probable cause. Langston's arbitrary and capricious failure to comply with the statute warrants the assessing of penalties. Accordingly, we assign to Langston a penalty of 12 percent of the unpaid benefits from May 11, 1992 to July 24, 1992 provided in La.R.S. 23:1201(E), thus amending the judgment of the hearing officer which failed to do so.

Termination of Claimant's Compensation Payments
Appellant asserts that compensation payments payable to the claimant were improperly terminated for the time period of August 29, 1992 to March 11, 1993. Cigna's adjuster testified that compensation payments for this period were terminated because Dr. Duhon had released the claimant to light duty. A review of the record does not support this contention for we find no specific statement of Dr. Duhon indicating that he released claimant to work. Based on this finding and the widely-held tenet that attorney's fees and penalties are warranted when an employer arbitrarily, capriciously, or without probable cause terminates or withholds benefits from a workers' compensation claimant, we award claimant attorney's fees and penalties pursuant to La.R.S. 23:1201(E).
The hearing officer did not address this issue. As stated earlier, a judgment silent on an issue is tantamount to an adverse holding on that issue. Danzey, 657 So.2d 491. Our award of attorney's fees and penalties thus serves as a reversal of the hearing officer's judgment on the issue of termination of compensation payments for the period of August 29, 1992 to March 11, 1993.

Refusal to Guarantee Medical Treatment From Dr. Cobb
According to Ms. Livings, Cigna refused to guarantee medical treatment by Dr. Cobb. Although defendants argue that they were justified in their actions, a review of the record supports Ms. Livings' position. Ms. Livings requested authorization for treatment by Dr. Cobb on August 10, 1992. On August 27, 1992, Cigna refused to give the authorization. The insurer finally gave authorization, but it was approximately one year after the initial request. The record indicates that there was no basis for the refusal.
Cigna asserts that the confusion as to the identity of Ms. Livings' treating physician at the time of the request justifies its refusal to approve medical treatment by Dr. Cobb. Cigna's adjuster testified that Cigna never approved the treatment because its records indicated that Ms. Livings was expected to see Dr. Miller based upon Dr. Duhon's referral. We find this to be an inadequate reason for delaying Ms. Livings' medical treatment.
Louisiana workers' compensation law permits an employee to make one choice as to a treating physician. La.R.S. 23:1121(B) states,
The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
In this case, the employee acted well within the parameters of the statute. Dr. Duhon was the employer's physician of choice. Ms. Livings had the right to seek the medical attention of her physician of choice and attempted to do so. Her attempts to see Dr. Cobb were foiled by Cigna's delaying its approval of the visits for approximately one year. Such a refusal to comply with the Louisiana laws of worker's compensation warrants the assessment of attorney's fees and penalties under La.R.S. 23:1201(E).

Termination of Physical Therapy
Additionally, Ms. Livings asserts that there was no reasonable basis for the termination of physical therapy. She testified that her physical therapy was terminated without any requests for her medical records. This indicates that the termination was random and not based on any professional recommendation. *411 Arbitrary and baseless actions that deprive an injured employee of needed therapy warrant the assessment of attorney's fees and penalties under La.R.S. 23:1201(E).
In this case, however, the record does not provide any information regarding the commencement or termination of physical therapy, and the parties' briefs are similarly vague on the issue. We, therefore, decline to award penalties and attorney's fees for the defendants' alleged arbitrary and capricious conduct in terminating physical therapy based on so little information.

Claimant's Entitlement to Supplemental Earnings Benefits Under La.R.S. 23:1221 et seq.

Entitlement to supplemental earnings benefits (SEB) is based on an employee's inability to earn wages equal to ninety percent of those earned prior to the workrelated accident. The governing statute is La.R.S. 23:1221(3). Section (a) of the statute states that an employee unable to earn wages equal to ninety percent or more of the wages he or she was earning pre-injury is entitled to SEB based upon a calculation of preinjury wages and possible post-injury wages he or she may earn in any employment or self-employment. The statute was implemented to provide relief for those employees who are partially disabled and who do not qualify for total disability benefits. Stutes v. Koch Services, Inc., 94-782 (La.App. 3 Cir. 12/7/94); 649 So.2d 987.
Both the employee and employer share the burden of proof in ascertaining entitlement to SEB. Initially, the burden is on the employee to show by a preponderance of the evidence that he or she is unable to earn wages equal to ninety percent or more of the wages earned prior to the work-related injury. If the employee is not engaged in any employment or is earning wages less than he or she is able to earn, the burden shifts to the employer who, in order to establish that the employee is not entitled to SEB, must show "that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1009 (La.1989); Peveto v. WHC Contractors, 93-1402 (La.1/14/94); 630 So.2d 689; Hebert v. Grey Wolf Drilling Co., Inc. 611 So.2d 674 (La. App. 3 Cir.1992); La.R.S. 23:1221(3)(c)(i).
According to the record, Ms. Livings met her burden of proof and showed entitlement to SEB. Prior to the accident, Ms. Livings held the position of seamstress. As a result of the accident, she was no longer able to perform her duties. When asked whether Ms. Livings would be able to perform the job she held prior to the accident or any job that required sitting for periods of time, bending, or trunk rotation, Dr. Cobb stated the following in his deposition:
I would have a lot of concern about the aggravation of the condition and the increase in pain that perhaps she might not even be able to do it in a satisfactory manner because of the problems that she's having....
Dr. Cobb's statement indicates that not only was Ms. Livings unable to perform the job she held before the accident, but also that she would be precluded from qualifying for a myriad of opportunities in her field of training and skill due to her injury-related limitations.
In order to prevent Ms. Livings from receiving SEB, Langston must show that Ms. Livings is physically able to perform the position of sewing machine operator or tab cutter, two positions deemed appropriate by the vocational rehabilitation expert assigned to Ms. Livings' case. The hearing officer's reasons for judgment states Ms. Livings failed to cooperate with her rehabilitation by refusing a reasonable job offer and is, therefore, precluded from receiving SEB. This finding is manifestly erroneous, and we reverse the hearing officer's judgment on this issue.
Ms. Livings contends that not only are these two positions unsuitable to her because of her physical limitations, but that Langston never offered these positions to her. A thorough review of the record supports Ms. Livings' position. The sewing machine operator position required bending and *412 rotating the trunk, the precise movements Dr. Cobb cautioned against performing. Our supreme court stated in Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129, that a claimant is not required to accept employment that would put him or her at risk of harm. Furthermore, the tab cutter position is an obsolete job replaced by an automatic tab cutting machine. There is nothing in the record to suggest that any job offer was extended to Ms. Livings. As such, she is entitled to SEB.
Rehabilitation plays a crucial role in ascertaining entitlement to SEB. The rehabilitation provided in this case was, at best, woefully inadequate. Carthy Wilson, a rehabilitation counselor, was assigned Ms. Livings' file unbeknownst to Ms. Livings. In her testimony at trial, Ms. Wilson stated that it was her duty as Ms. Livings' vocational rehabilitation counselor "to obtain her current treatment plan and medical status, physical restrictions, and evaluate opportunities to return to work." In October of 1995, Ms. Wilson conducted a rehabilitation consultation with Dr. Cobb in order to determine current medical status and physical restrictions. The meeting with Dr. Cobb and the subsequent obtaining of medical records occurred without Ms. Livings' permission or knowledge. Ms. Wilson testified that she had absolutely no contact with her client Ms. Livings, but did provide frequent status reports to Cigna. Such unilateral treatment leads one to question exactly who is to benefit from rehabilitation if the client is not contacted or is even aware that such a service is being rendered.
Once two possible positions with Langston were found, Ms. Wilson contacted Ms. Livings' attorney via mail providing him with job descriptions. Additionally, Ms. Wilson identified herself and her role in Ms. Livings' case stating that Dr. Cobb had released the client to work and that Langston had the positions of tab cutter and sewing machine operator open. Included in the letter were descriptions of the positions. It is important to note, however, that the job descriptions were egregiously inaccurate. Ms. Wilson failed to mention the fact that the sewing machine operator position required extensive and repetitive bending and rotating of the trunk, two movements Dr. Cobb explicitly stated were off-limits to Ms. Livings. At trial, Ms. Wilson admitted that her sewing machine operator job description was inaccurate and further, that she never actually saw the tab cutter machine in operation which precluded her from making an accurate assessment of the physical demands of operating it.
Ms. Wilson also requested in her letter that Ms. Livings and her attorney respond within seven days of its receipt; Ms. Livings' attorney received the letter on February 12, 1995. Curiously, Ms. Wilson required an immediate response to her notification when, in reality, she had been handling Ms. Livings' file for nearly seven months and never once contacted her. Although Ms. Wilson never deemed it necessary to contact the very person she was assigned to help, she did manage to keep Cigna informed with routine status reports.
This case sheds light on the growing abuse of vocational rehabilitation services by employers and insurers. In Maxie v. Brown Industries, Inc., 95-19 (La.App. 3 Cir. 5/31/95); 657 So.2d 443, this court underscored those services which do not constitute rehabilitation. The rehabilitation experts in that case met with their client for a mere three and a half hours, deeming it more important to conduct labor market surveys and prepare reports than to obtain basic information on their client's rehabilitation needs or to conduct educational testing. Id. Moreover, there was nothing in the record to indicate that the jobs in the counselors' list were offered to the client or that the jobs were even available to him in his or his employer's community or geographic area. Id.
The rehabilitation services provided in Maxie prompted this court to expose the blatant misuse of rehabilitation services. We indicated that sophistic rehabilitation would not be tolerated by the courts and stated the following criticism:
This so-called "client-counselor" relationship is a subterfuge whose apparent purpose is to advance the interests of the entity which is paying for the services. It *413 is no more than a cruel diversion from the reality of the goals it ought to advance. Regrettably, the use of vocational rehabilitation "experts" has become a forensic tool on behalf of employers who use it to betray the salutary principles and obfuscate the ameliorative objectives of our workers' compensation laws. Maxie, 657 So.2d at 448. (citations omitted).
It is now incumbent on this court to explain what serves as proper rehabilitation in order to avoid further violations and manipulations of the service.
Rehabilitation under Louisiana Workers' Compensation Law is governed by La.R.S. 23:1226. The primary goal of rehabilitation as provided by section B of the statute is to return a disabled worker to work efficiently and expediently with minimum retraining. The statute directs the employer and/or insurer to follow in sequential order a list of options and to apply the first appropriate one. The list of options is the following:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
The statute further states that the employer is required to provide rehabilitation services to the employee who, due to a work-related injury, is unable to earn wages equal to those earned prior to the injury. Rehabilitation services may be initiated by the insurer or self-insured employer, the Office of Workers' Compensation Administration by requiring the insurer or self-employed insurer to designate a rehabilitation provider, or by the employee through a request to the Office of Workers' Compensation Administration. La. R.S. 23:1226(C).
Before an appropriate option can be chosen from the list of alternatives in La.R.S. 23:1226, important rudimentary questions need answers. For this reason, vocational rehabilitation must begin with a vocational evaluation. An accurate evaluation pulls from several independent sources in order to fully identify and document the injured worker's needs, limitations, and skills. A thorough rehabilitation counselor will consult medical records, treating physicians, and just as importantly, the client/injured employee. In addition, appropriate forms of skills and achievement tests should be utilized.
From the medical records and the treating physicians, a rehabilitation counselor can accurately assess a client's physical limitations. A client's medical history plays a critical role in determining what types of jobs a client is physically able to perform. Knowledge of a client's physical abilities and disabilities prevents the rehabilitation counselor from including in its labor market survey or employment recommendations jobs ill-suited to the client, as the sewing machine operator position was to Ms. Livings.
The importance of developing a personal history on a client/injured worker through face-to-face interviews cannot be overemphasized. It is during personal meetings that a counselor can assess a worker's overall abilities to enter the work force once again. Careful attention is to be placed on the client's social, educational, and vocational histories in order to establish the client's level of expertise in given fields as well as his ability to adapt to different work settings. It is inconceivable that a rehabilitation counselor would attempt to return a worker to suitable employment without getting answers to primary questions; in no other realm of counselor-client relationships would such manifest lack of regard for the well-being of the client be tolerated. Vocational rehabilitation should be no exception.
Expanding on the client's medical, educational, and social history through skills tests is vital for a rehabilitation counselor to ascertain a client's basic reading, writing, mathematical, and communication skills. Our supreme court in Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La. 1993), directed the Louisiana courts to consider a totality of factors in assessing access *414 to employment. In Pinkins, the rehabilitation counselors carelessly recommended the position of gas station cashier to an illiterate client; in the case before us now, a job requiring the bending and rotating of the back was suggested to a client suffering from a back injury whose physician specifically cautioned against such movements. Seemingly, the purpose of rehabilitation, i.e., returning clients back to work, got lost in the shuffle of providing quick and impersonal services in order to facilitate large employers and insurers. Vocational rehabilitation counselors can and must do better.
Throughout the rehabilitation process, close communication should be maintained with the client/injured worker who is, after all, the beneficiary of the services. The culminating part of the evaluation process is an information session during which the counselor reviews the fruits of his research in order that there be a mutual understanding of the means and purpose of the rehabilitation process. Furthermore, a communication session provides for the opportunity to ascertain the accuracy of the counselor's research as well as recent changes that may affect the process.
A final noteworthy benefit of the counselor's maintaining open communication with the client/injured worker is that the duties of each can be clearly defined. Contrary to frequent practice, rehabilitation does not end with providing the client with a list of jobs. The client may require further help such as interview skills training, resume writing skills, and further vocational training. It is the duty of the vocational rehabilitation counselor to aid the client in returning back to work with as little retraining as possible, not leave a client with a list of inappropriate jobs based on impersonal information and consider the service completed.
Employers and injured employees must work cooperatively to assure that the employment of rehabilitation counselor is not a perversion of the goals of rehabilitation services delineated in La.R.S. 23:1226(B)(1)(2). The ultimate objective is placement of the worker back into a competitive position in the labor market so that one's employment opportunities are reasonably maximized and the costs to the employer, specifically, and to the workers' compensation system, generally, are minimized. Only then will conformance to the laudable ideals of rehabilitation be truly effectuated.

Attorney's Fees
Due to the defendants' arbitrary and capricious handling of Ms. Livings' claim, the hearing officer awarded an attorney's fee of $1,500.00. Ms. Livings appeals and seeks an increased award based on her attorney's time, effort, and expenses in handling her claim. Among the factors to consider in determining an award of attorney's fees in a workers' compensation case are the degree of skill and expertise shown, the amount of the claim, the amount recovered, and the amount of time spent on the case. Thibodeaux v. Woman's Hosp. of Acadiana, 578 So.2d 213 (La.App. 3 Cir.1991).
Ms. Livings' attorney has actively represented her against Langston and Cigna since August of 1992. He timely and aggressively made requests upon defendants for necessary information and promptly responded to their requests. In January of 1993, he filed a claim on Ms. Livings' behalf with the Office of Workers' Compensation Administration. In preparation for trial, he conducted and complied with full discovery. He prepared for the deposition of Dr. John Cobb, Ms. Livings' treating physician, and attended Ms. Livings' deposition. His representation continued throughout the trial and the submission of an appellate brief in which he set forth several issues for our review.
Based on the amount of time and effort Ms. Livings' counsel invested in this case, we find that the hearing officer erred in awarding $1,500.00 in attorney's fees. We increase the award to $7,500.00.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is amended and affirmed in part and reversed in part.
*415 Cigna is hereby ordered to pay the $250.00 civil penalty set forth in La.R.S. 23:1125 for failing to provide medical reports requested by Ms. Livings. For its termination of compensation payments for the period of August 29, 1992 to March 11, 1993, Cigna is ordered to pay the twelve (12) percent penalty set forth in La.R.S. 1201(E). Cigna is further ordered to pay the La.R.S. 1201(E) penalty for its refusal to guarantee Ms. Livings' medical treatment by Dr. Cobb. Additionally, Cigna is ordered to pay Ms. Livings supplemental earnings benefits.
Langston is ordered to pay the twelve (12) percent penalty set forth in La.R.S. 1201(E) for its arbitrary and capricious handling of Ms. Livings' claim.
Due to the time, effort, and expenses put into this claim by Ms. Livings' attorney, we raise the attorney's fees award to $7,500.00.
AMENDED AND, AS AMENDED, AFFIRMED IN PART AND REVERSED IN PART.