|, AMY, Judge.
The employer in this workers’ compensation matter terminated the payment of benefits to an employee injured in a work-related accident. The Office of Workers’ Compensation held that the employer proved the employee’s ability to return to work and, further, that the termination was neither arbitrary and capricious nor without reasonable contravention. The employee appeals. We reverse.
Factual and Procedural Background
According to stipulations entered into the record in this workers’ compensation matter, Carolyn Fontenot was involved in a work-related accident on December 18, 1994 while performing her duties as a nursery attendant with the First Baptist Church of Lake Arthur. Due to this accident, Fontenot sustained a knee injury and began receiving temporary total disability (TTD) benefits at a rate of $118.00 per week. Further, the record reveals that, following the accident, Fontenot was paid disability benefits until they were terminated by the employer in May 1997.
|2The instant matter was originally instituted in July 1996 when the employer’s insurer, Preferred Risk Group, filed a disputed claim for compensation asserting as follows: “Employee is able to return to full-time gainful employment but refuses to submit to rehabilitation and efforts to find her suitable employment.” Attached to this form was a motion and order to compel rehabilitation and/or suspend benefits. Although benefits had not been terminated at that point, Fontenot responded to the petition and filed a reconventional demand asserting her continued entitlement to benefits as well as penalties and attorney’s fee alleging that “Defendants-in-reconvention have arbitrarily and capriciously refused to pay worker’s compensaT *233 tion benefits due employee entitling employee to penalties of twelve (12%) percent on all benefits due, together with reasonable attorney fees for cost of collecting the worker’s compensation benefits.”[1]
The employer filed a motion to dismiss the reconventional demand, arguing that the demand was meritless because benefits had been paid. A hearing to show cause was scheduled in this regard. Subsequently, the employer also filed a motion and order to continue the hearing on its motion to compel rehabilitation, alleging that such a hearing had been rendered premature by Fontenot’s physician’s finding that her medical condition had changed.
The matter was reinstated before the Office of Workers’ Compensation when, on February 3, 1997, the employer again filed the motion and order to compel rehabilitation and/or suspend benefits. In that motion, the employer maintained that 13in status reports dated December 6, 1996 and January 20, 1997, Fontenot’s physician found that she had reached maximum medical improvement as of December 6, 1996 and that she could return to sedentary work. According to the employer’s argument, Fontenot refused to submit to a vocational rehabilitation interview and evaluation despite the finding that she could return to work. Thus, the employer sought an order compelling the interview and evaluation and suspension of Fonte-not’s workers’ compensation benefits until compliance with the rehabilitation efforts.
Following the May 2, 1997 hearing held on the employer’s motion, the workers’ compensation judge ordered that Fontenot submit to a comprehensive vocational reha-biliation evaluation. In ordering this evaluation, the workers’ compensation judge commented that she could not determine whether further rehabilitation efforts were required pursuant to La.R.S. 23:1221(3) or La.R.S. 23:1226 until such an initial evaluation was performed. The judge stated that, after the evaluation, the employer would “report on the results of that evaluation and tell the Court whether or not the claimant is entitled to further rehabilitation pursuant to Section 1226[2] or if the results of the evaluation will be used to convert benefits to |41221(3).” The workers’ compensation judge also denied the employer’s request to suspend or terminate benefits due to failure to cooperate.[3] *234 The record reflects that, subsequent to the hearing, however, the employer unilaterally terminated Fontenot’s workers’ compensation benefits.
After the vocational rehabilitation evaluation was performed, the remaining issue of Fontenot’s right to benefits as well as entitlement to penalties and attorney’s fees proceeded to trial on January 20, 1998. Following testimony from Fontenot and the two rehabiliation counselors involved in the vocational rehabilitation evaluation, the trial court rendered oral reasons for ruling on May 7, 1998. The workers’ compensation judge concluded Fontenot had failed to prove her entitlement to TTD benefits or supplemental earnings benefits (SEBs) and that the employer demonstrated the availability of a suitable position. Furthermore, the judge denied | ¿penalties and attorney’s fees for the termination of benefits because, at the time of termination, Fontenot’s treating physician found her to be at maximum medical improvement. The workers’ compensation judge concluded that, although not judicially approved, the employer took actions it was legally entitled to take.
Fontenot appeals assigning the following as error:
1. The worker’s compensation judge erred in failing to award weekly compensation benefits from May, 1997 through December, 1997.
2. It was error for the hearing officer to fail to award weekly compensation benefits from December, 1997 until further orders of the Office of Workers’ Compensation or this Court.
8. The workers’ compensation judge erred in failing to find that Carolyn Fon-tenot was entitled to penalties and attorney’s fees.
4. It was error for the hearing officer to dismiss Carolyn Fontenot’s claim with prejudice.
Discussion
Entitlement to Benefits
In her first two assignments of error, Fontenot argues that the workers’ compensation judge erred in failing to award disability benefits. First, Fontenot alleges that the lower court erred in failing to award benefits from the time of termination, May 1997, until December 1997, the time at which Fontenot was informed of jobs identified by the rehabilitation counselors. Next, Fontenot addresses benefits for the period beginning in December 1997. She asserts that she is entitled to benefits from this date until further orders of the court. She argues that the court erred in denying benefits as she proved entitlement and, further, that even if the employer terminated benefits as punishment for failure to cooperate with rehabilitation efforts, the pertinent statute, La.R.S. 23:1226, does not permit termination of benefits, but, rather, a reduction of benefits by 50%.
|fiAs provided in La.R.S. 28:1221(3)(a),[4] an employee is entitled to *235 SEBs if he sustains a work-related injury-resulting in an inability to earn ninety-percent or more 17of his average pre-injury wage. An employee seeking SEBs must initially prove that the injury resulted in his inability to earn that amount. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98); 708 So.2d 375. This burden must be met by a preponderance of the evidence. Id.
After the employee satisfies the above-described initial showing, the burden shifts to the employer. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97); 704 So.2d 1161. Upon this burden shift, the employer “must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region.” Id. at p. 8, at 1166; (citing La.R.S. 23:1221(3)(c)(i)). If the employer meets this burden, the burden returns to the employee to prove, by clear and convincing evidence, that he is unable to perform the available duties solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii). See also Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449.
We first note that the workers’ compensation judge’s reasons for ruling do not delineate between these two periods, but, rather, indicate the judge’s appreciation that the employer proved that the employee was not entitled to SEBs. The workers’ compensation judge explained that Fonte-not’s treating physician, Dr. Walker, indicated that she had reached maximum medical improvement as early as 1995 and that Fontenot had refused to submit to rehabilitation. The judge explained, in part, as follows:
|sThe medical records support the conclusion that Fontenot cannot return to her pre-injury duties or a modified position in the same field. Dr. Grimes’ report indicates but does not state specifically that Fontenot would not be a suitable candidate for retraining either.
To reiterate, he says that with appropriate vocational counseling, she can perform the light-duty work to which she was released by her treating physician. He specifically mentions encouragement, support, job-seeking skills, interview skills, training, and job placement assistance, all of which he has been providing to Fontenot since his initial interview with here [sic].
In Livings v. Langston Company, the Court said that it is the duty of the vocational rehabilitation counselor to aid the client in returning back to work with as little retraining as possible. The cita *236 tion for Livings is 685 So.2d 405. Dr. Grimes has made and is making a valiant effort to assist Fontenot in returning to the labor market.
Dr. Grimes believes there are light-duty jobs available that Fontenot can perform and which are in keeping with the restrictions placed on her by her treating physician. Dr. Grimes testified that he identified two jobs for Fontenot. One was as a telephone operator at Jennings Answering Service. The salary is Five Dollars and Fifteen Cent ($5.15) per hour, with a twenty- to thirty-hour work week. This is equal to the salary Fontenot was earning prior to her injury. The other job was as a dispatcher for which Fontenot testified she had no transportation.
To defeat Fontenot’s claim for supplemental earnings benefits, the Church must prove by competent evidence, one, the existence of a suitable job within Fontenot’s physical capabilities and within her or the employer’s community or reasonable geographic region; two, the amount of wages that an employee with Fontenot’s experience and training can be expected to earn in that job; and three, an actual position available for that particular job at the time that Fon-tenot received notification of the jobs existence.
In Banks v. Industrial Roofing & Sheet Metals [Metal] Work [Works], number 96-2840 — it’s a Louisiana Supreme Court Case rendered July 1, 1997 — the Court said, “by suitable job, we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education unless, of course, the employer or potential employer is willing to provide any additional training or education.”
|9The Court finds that the Church has sustained the burden of showing that a suitable job is available to Fontenot in keeping with her age, education, and experience and one that she is physically capable of performing. The telephone operator position was available to Fonte-not, and Dr. Grimes mailed her resume’ to Jennings Answering Service. Additionally, Jennings Answering Service would provide training to Fontenot, said Dr. Grimes. At the time of trial, there had been no response from Jennings, however.
The other position as a dispatcher is not suitable because Fontenot testified that she has no transportation to get to this position. Additionally, the position with Jennings Answering Service is in keeping with the hierarchic [sic] of goals set forth in section 1226 of the Act.
Accordingly, Fontenot has failed to sustain the burden of proving entitlement to TTD or SEB, and no penalties or attorney fees are awarded herein.
We next turn to whether these findings are manifestly erroneous when the evidence presented is viewed in light of La. R.S. 23:1221(3) and the shifting burdens contained therein.
May — December 1997
In her first assignment, Fontenot addresses the period beginning in May 1997, when benefits were terminated, until December 1997, when she was informed of job openings located by the rehabilitation counselor. Our review of the evidence presented in this matter, most of which was entered into the record by Fontenot, reveals the workers’ compensation judge erred in finding that she was not entitled to benefits during that period. This conclusion is apparent when viewed in light of the shifting burdens encountered in an La.R.S. 23:1221(3) analysis.
As explained above, Fontenot, as an employee seeking SEBs, had the initial burden of establishing, by a preponderance of the evidence, that she was unable to 110earn 90% of her pre-injury wages. The record reveals that this preliminary burden was met as Fontenot entered into evidence records from her treating physician indicating that, although she had reached maximum *237 medical improvement by this time, she could not return to her previous position and that she could only return to sedentary work. In Dr. Walker’s report of a December 6, 1996 examination, he reported that a previous functional capacity evaluation established a light workload capacity and that Fontenot “would be further restricted in squatting, kneeling, or extensive climbing.” He confirmed that “[slitting, walking, pushing, and pulling within the light demand classification would be tolerated well.” Further, not only was evidence of diminished physical capacity entered into evidence, but Fontenot testified that she had inquired in her area as to the availability of positions and had been unable to find employment. In support of this testimony, she entered into evidence a list of the businesses contacted in her job search.
The limited availability of acceptable positions for Fontenot was further demonstrated by the testimony of the vocational rehabilitation counselors who testified as to Fontenot’s capabilities. Dr. John Grimes testified Fontenot performed poorly on aptitude tests he had administered. He stated that “intellectually, we found Mrs. Fontenot would be in the full or the low average range.” Further, Dr. Grimes opined that “[sjhe’s going to be a semiskilled type worker. She’s not going to be an individual that will do that well in a vocational technical curriculum even if she were a younger person.” Considered in its totality, Fontenot’s evidence demonstrated that she could not return to her former position, that she could only return to sedentary positions, that her career options were further limited by her intellectual capabilities, |nand that her own job-search efforts in the area were unsuccessful. Therefore, we conclude that the plaintiff proved, by a preponderance of the evidence, that she was unable to earn 90% of her pre-injury income.
After the employee established this initial burden, the burden shifted to the employer to establish, at a minimum, the following by competent evidence as explained by the Louisiana Supreme Court in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 10-11 (La.7/1/97); 696 So.2d 551, 557:
(1) the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
During the period addressed in this first assignment of error, from May until December 1997, there is no evidence supporting the workers’ compensation .judge’s finding that the employer met its burden of proving the existence of a suitable position. The positions that the employer submitted as acceptable were not identified until December 1997, several months after the May termination. Thus, the positions presented as available were not available until several months later, in December 1997. Therefore, these positions cannot be relied upon by the employer as satisfying the criteria explained by the supreme court in Banks. Due to this lack of evidence from this period, the employer failed to satisfy the burden of proof necessary to reduce or defeat SEBs.
| ^Furthermore, although both Fontenot, in her brief to this court, and the workers’ compensation judge made reference to the employer’s termination of benefits as related to Fontenot’s lack of cooperation in rehabilitation efforts, this assertion, too, is without merit. La.R.S. 23:1226(E) provides, in part, that “[rjefusal to accept rehabilitation as deemed necessary by the workers’ compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant *238 to R.S. 23:1221(3), for each week of the period of refusal.” This penalty provision, however, cannot be enforced unilaterally by the employer after refusal to submit to rehabilitation, but, rather, the issue must be presented to a workers’ compensation judge. Ramogasse v. Lafitte Welding Works, 93-682 (La.App. 5 Cir. 12/13/95); 666 So.2d 1176.
While the issue of an initial rehabilitation evaluation was before the lower court originally, and, in fact, such an evaluation was issued, the workers’ compensation judge refused to impose the fifty percent benefit reduction pursuant to La.R.S. 23:1226(E). In ordering this evaluation, the workers’ compensation judge stated that the comprehensive rehabilitation evaluation was being ordered to determine whether further rehabilitation would be required under the article. Even if the judge had concluded that the ordering of the evaluation necessitated penalties, the reduction of benefits per operation of La. R.S. 23:1226(E) would only have been for fifty percent, not a termination of benefits in their entirety. In any event, however, it appears from the employer’s argument to the lower court and its argument to this court, that the employer’s termination of benefits was unrelated to the lack of | ^cooperation, but due to the belief that Fontenot could return to work. As discussed above, however, this belief was not substantiated in the record.
For these reasons, we conclude that the workers’ compensation judge erred in finding that Fontenot was not entitled to any benefits for the time period between May and December 1997.
December 1997 — Order of the Court
For this next period, beginning with identification of potential positions, Fontenot asserts that, although the employer identified positions in December 1997, the positions located were insufficient under the Banks analysis.
As explained above, Fontenot satisfied her burden of proving her inability to earn at least 90% of her pre-accident wage. The employer offered evidence of two positions located by the vocational rehabilitation counselor, Dr. Grimes. As explained by the workers’ compensation judge, one of these positions was found to be inadequate as Fontenot did not have transportation to the out-of-town location. The other option, a position with the Jennings Answering Service, was found to be appropriate by the workers’ compensation judge and in compliance with Banks. The workers’ compensation judge explained as follows:
The Court finds that the Church has sustained the burden of showing that a suitable job is available to Fontenot in keeping with her age, education, and experience and one that she is physically capable of performing. The telephone operator position was available to Fonte-not, and Dr. Grimes mailed her resume to Jennings Answering Service. Additionally, Jennings Answering Service would provide training to Fontenot, said Dr. Grimes. At the time of trial, there had been no response from Jennings, however.
The other position as a dispatcher is not suitable because Fontenot testified that she has no transportation to get to this position. | ^Additionally, the Jennings Answering Service is in keeping with the hierarchic [sic] of goals set forth in section 1226 of the Act.
Our review of the employer’s evidence in light of Banks indicates that the workers’ compensation judge erred in concluding that the employer met its burden of proof with regard to the answering service position. To defeat or reduce a claimant’s entitlement to SEBs, the employer must prove, by competent evidence, “the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region[.]” Banks, 96-2840, p. 10; 696 So.2d at 557. While there is indication in the record that the answering service position was classified as sed *239 entary by the vocational rehabilitation counselor, there is no testimony indicating that the position is within Fontenot’s physical limitations as it requires “occasional” standing and walking. Furthermore, this position was never approved by Fontenot’s treating physician, Dr. Walker. Therefore, the evidence offered, much of which was not submitted by the employer but is only found within Fontenot’s submission, was insufficient to meet this first “minimal” requirement set forth in Banks. This deficiency, alone, prevents the employer from satisfying its burden. However, consideration of the other factors reveals further deficiencies in the employer’s case.
If the first requirement is met, the employer must demonstrate “the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job[.]” Banks, 96-2840, p. 10; 696 So.2d at 557. Dr. Grimes indicated that the pay level of the answering service position was $5.15 per hour. Thus, it was not error for the workers’ compensation judge to conclude that this element of the | nBanks element was fulfilled. However, we note that the part-time position was for twenty-to-thirty hours of work per week. At this rate, even if calculated at the maximum number of hours of work possible for the part-time position, thirty hours per week, this position would have resulted in a wage slightly less than 90% of Fonte-not’s pre-injury wage.[5] Therefore, even if the employer established that this type of job was available, Fontenot would have been entitled to minimal SEBs for the small difference between the wages proven available and those actually earned prior to her injury.
Finally, Banks requires that an employer show that there was “an actual position available for that particular job at the time that the claimant received notification of the job’s existence.” Id. at p. 11; at 557. Although there was no testimony to that effect, the record includes correspondence between Dr. Grimes and Fontenot’s counsel apprising her of the answering service position. This correspondence which, once again, was entered into evidence not by the employer, but by Fontenot, indicates that a letter, dated December 80, 1997, notified Fontenot of the position with the Jennings Answering Service. Although the vocational rehabilitation counselors testified as to the existence of such a position, they did not testify as to when they learned of the position or whether that position was, in fact, available on December 30, 1997. The only evidence in the record of when the position was available is in what appear to be notes taken by the rehabilitation counselors in the course of their search for a suitable position for Fontenot. An entry |u;dated December 29, 1997 is contained within the handwritten note and supplies information regarding the answering service position. However, there is no testimony which would place this note into context. No information is contained within, the notes or in testimony to indicate which counselor working on the case obtained the information and whether the answering service was contacted on that date, whether the position was immediately available, etc. This evidence is not the type of competent evidence contemplated by Banks.
For the above reasons, we conclude that the workers’ compensation judge was manifestly erroneous in finding that the employer adequately demonstrated the availability of jobs which Fontenot could perform.
Penalties and Attorney’s Fees
In her next assignment of error, Fonte-not asserts that the workers’ compensation judge erred in failing to assess penalties and attorney’s fees for the termination of benefits. Additionally, she argues that she *240 is further entitled to penalties since, at the time workers’ compensation benefits were being paid, they were paid on a monthly basis rather than the weekly basis on which her wages had been paid. Finally, Fontenot contends that she should be paid penalties for the late payment of a medical bill. She maintains that she is entitled to penalties for this payment since there is no proof of payment in the record.
With regard to penalties and attorney’s fees, the workers’ compensation judge stated as follows in oral reasons for ruling:
Accordingly, Fontenot has failed to sustain the burden of proving entitlement to TTD or SEB, and no penalties or attorney fees are awarded herein. Fontenot says she is entitled to penalties and attorney 117fees because the Church unilaterally terminated her benefits in May 1997 when she refused to-cooperate in vocational rehabilitation.
At the time the Church terminated benefits, Dr. Walker had found Fontenot to be at maximum medical cure. The Act requires the Church to initiate rehabilitation. Therefore, Fontenot cannot now complain that her benefits were terminated when she failed and refused to do what the Act required of her. The Church could have continued to pay benefits and then have them suspended or terminated retroactively to the date of her refusal to cooperate.
The Church took action it was legally authorized to do, albeit without judicial approval. This, however, is not arbitrary or capricious conduct. Therefore, the court finds that the Church was neither arbitrary, capricious, or without reasonable cause in terminating benefits or in otherwise handling this claim. And the Court finds that benefits were properly terminated in May 1997.
Fontenot failed to submit or submitted insufficient evidence on the other issues to be resolved; namely, failure to pay weekly benefits timely; refusal to pay mileage for consultation with the rehabilitation counselor; failure to pay a medical bill irom diagnostic radiology within sixty days of the date it was submitted for payment. Therefore, these issues are resolved in favor of the employer.

Penalties

La.R.S. 23:1201 provides, in part, for the imposition of penalties as follows:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
[[Image here]]
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all | ^compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
[[Image here]]
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
The Louisiana Supreme Court has recently stated as follows:
*241 In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reasons or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 28:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown v. Texas-LA Cartage, Inc., 98-1068, p. 9 (La.12/1/98); 721 So.2d 885.
In Brown, the supreme court observed that the claimant had been untimely and partially compensated thereby triggering the award of penalties under La. R.S. 23:1201(F) unless the issue was either reasonably controverted or the lack of timely payment was due to circumstances beyond the employer’s control. Under the facts presented in Brown, the court concluded that the partial/untimely payment was neither reasonably controverted nor beyond the employer’s control as it arose, in part, from the “insurer’s internal policy of only issuing checks on Wednesday.” Id. at p. 11, at 891. In recognizing the strict reading of the statutory language, the court noted that 119“the defendants did not act in an egregious manner in this case. However, the purpose of an imposition of penalties is to ‘nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation.’ ” Id. at p. 13, at 893;(quoting Weber v. State, 93-0062, p. 8 (La.4/11/94); 635 So.2d 188, 193).
As for the termination of benefits, we conclude that the workers’ compensation judge erred in refusing to impose penalties. By May 1997, Dr. Walker had, indeed, found Fontenot to have reached maximum medical improvement and released her to return to work. However, he did not release her to return to her prior employment but rather, approved her return to sedentary work only. At the time of termination, the employer had no basis by which to believe that any position was available for which Fontenot was qualified. Therefore, Fontenot is entitled to penalties pursuant to La.R.S. 23:1201(F).
With regard to the monthly rather than weekly payment of benefits, we find that, here too, the workers’ compensation judge erred in refusing penalties on this basis. As quoted above, La.R.S. 23:1201(A) provides that “[p]ayments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident[.]” (Emphasis added.) While this statute appears absolute, La.R.S. 23:1201(F)(2) provides that, in those instances where payment is untimely, the provision “shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.”
laAs Fontenot testified that, prior to her injury, she had received her checks once a week and, after the accident, she received her checks monthly, there is no question that the employer did not provide her compensation benefits at the “same time ... as wages were payable to the employee before the accident[.]” La.R.S. 23:1201(A). Therefore, as the supreme court explained in Brown, 98-1063; 721 So.2d 891, we must determine whether either of the exceptions that prevent the imposition of penalties is present. We conclude that, based upon the clear language of the statute and the supreme court’s strict application of La.R.S. 23:1201(F) in Brown, the monthly payment of benefits neither reasonably controverted this matter nor was *242 it beyond the employer’s control. This reason, too, entitles Fontenot to penalties.
Although we have concluded there are two bases on which penalties should have been awarded, we find no merit in Fonte-not’s assertion that she is due penalties for the employer’s untimely payment of a $33.00 medical bill. Reference to the transcript indicates that this payment was made an issue for the first time at trial. In response to the employer’s request, the record was held open so that proof of the bill’s payment could be presented to the court. Although the workers’ compensation judge did not specifically address whether proof had been presented as to payment, she stated that Fontenot had submitted insufficient evidence to recover penalties in this regard.
If her brief to this court, Fontenot maintains that the record does not contain proof that the bill was ever paid. The employer asserts that a processed check proving payment was submitted but that it is not contained within the record. Thus, the employer attached a copy of the check to its brief to this court. Our review of the 12,record reveals that, although the check may not have been specifically entered into evidence, it does appear in the bound record and is attached to the employer’s post-trial memorandum. Furthermore, we are mindful that the record was held open for the employer to submit proof of evidence and that the entire record, which would include the post-trial memorandum, was entered into evidence. Whether the processed check was properly admitted into evidence or was presented to the lower court as an attachment, this court is now aware of two copies of the check indicating payment of the bill. To ignore such evidence, evidence which was apparently available to the lower court, would render an absurd result. Therefore, we find no error in this regard.

Attorney’s Fees

La.R.S. 23:1201.2 provides for the imposition of attorney’s fees for the discontinuance of benefits in the following instance:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
Our review of this matter indicates that the termination of benefits warrants the imposition of attorney’s fees discussed in La.R.S. 23:1201.2. As'explained in the statute, attorney’s fees are warranted when “discontinuance is found to be arbitrary, capricious, or without probable cause....” The timing of the initial termination of | ^benefits in this instance appears to be nothing if not arbitrary. According to the record, the employer knew for quite some time that Dr. Walker had found Fontenot to be at maximum medical improvement and released to work at a sedentary position. However, given this knowledge, the employer continued to provide benefits and, with no further information, terminated benefits. At that time, the court-ordered rehabilitation studies had not been performed and Fontenot’s capabilities had not been established. Neither was there any indication that positions were available which met the physical limitations described by Dr. Walker. Therefore, termination in May 1997 was arbitrary and capricious. Pursuant to La.R.S. 23:1201.2, Fontenot is awarded $7,500.00 in attorney’s fees.
Dismissal
In her final assignment of error, Fonte-not argues that the lower court erred in dismissing her claim with prejudice. She argues that since the parties stipulated *243 that the employer would pay for medical treatment resulting from the accident and Dr. Walker opined that knee replacement surgery might be necessary in the future, that dismissal with prejudice was error. The employer asserts that “any dismissal of the plaintiffs claims, with prejudice, relate to those issues raised up until the time of trial, and are not related to any future medical treatment and medical expenses. ...”
Given our reversal of the lower court’s determination regarding benefits and penalties and attorney’s fees, this issue is rendered moot. Furthermore, our review of the record clearly indicates that the parties stipulated as to the employer’s continuing liability for medical benefits arising from the work-related accident.
I23DECREE
For the foregoing reasons the decision of the Office of Workers’ Compensation is reversed and judgment is entered in favor of the employee, Carolyn G. Fontenot. The employer, First Baptist Church of Lake Arthur, is ordered to provide supplemental earnings benefits on a zero-base earning capacity retroactive to the termination date in May 1997. Legal interest on these benefits is ordered from the due date of each payment. Furthermore, penalties in the amount of $2,000.00 and attorney’s fees in the amount of $7,500.00 are assessed against the First Baptist Church of Lake Arthur. Legal interest from the date of judgment is awarded for both penalties and attorney’s fees.
REVERSED AND RENDERED.
THIBODEAUX, J., CONCURS AND ASSIGNS ADDITIONAL REASONS.

. Fontenot’s reconventional demand also reveals an assertion that various statutes relating to workers’ compensation are unconstitutional. This demand, however, was later dismissed upon motion by Fontenot’s attorney.

. When asked to clarify whether the evaluation was being ordered pursuant to La.R.S. 23:1221 or La.R.S. 23:1226, the workers' compensation judge explained as follows:
This examination is being ordered under 1226. The Court feels that a comprehensive vocational rehabilitation evaluation is necessary in order to determine whether or not the claimant can earn wages equal to ninety percent (90%), can earn wages equal to her pre-injury wages or not. And the only way that the defendants are going to be able to determine whether or not she is entitled to the services which are to be provided for her under 1226, if she is not able to earn equal wages, is to do, first, a comprehensive vocation evaluation, which is spoken of in the cases that I mentioned.

.The record reveals that Fontenot filed a writ application with this court following the ruling of the Office of Workers' Compensation. The majority of the panel hearing the writ' rendered the following decision:

WRIT GRANTED IN PART AND MADE PEREMPTORY; WRIT DENIED IN PART:

We find no proof in the writ application filed on behalf of relator, Carolyn Fontenot, that substantiates her claim that the worker’s compensation judge’s ruling subjects her to multiple vocational rehabilitation counselor examinations of the employer’s and insurer's choosing or that the entities failed to carry their burden-of proof in this matter. However, we find that the ruling of the worker’s compensation judge does not comply with the requirements of La. R.S. 23:1226(B)(3) due to the omission from the ruling of the appointment of a specific vocational rehabilitation counselor approved by the office. Accordingly, this matter is remanded to the office for a.specification as required by the aforementioned statute.
*234 The record indicates that, subsequent to this instruction, the workers' compensation judge appointed Dr. John Grimes, a licensed vocational rehabilitation counselor, to perform the previously-ordered examination.

. La.R.S. 23:1221(3) provides the statutory guidelines for supplemental earnings benefits and provides, in part, as follows:
(3) Supplemental earnings benefits.
( a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four *235 and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.

. The parties stipulated at trial that if the court concluded that benefits were owed, the proper rate of compensation was $ 118.00 per week.