638 So.2d 693 (1994)
Truedy AUTIN, Plaintiff and First Appellant,
v.
HESSMER NURSING HOME, Defendant and Second Appellant.
No. 93-1492.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Rehearing Denied July 26, 1994.
*694 Jerold Edward Knoll, Marksville, for Truedy Autin.
Charles Munson Lanier, Jr., New Orleans, for Hessmer Nursing Home.
Before DOUCET and LABORDE, JJ., and BERTRAND[*], J. Pro Tem.
DOUCET, Judge.
This appeal concerns a worker's compensation claim. Plaintiff, Truedy Autin, filed suit against the defendant, Hessmer Nursing Home[1], seeking weekly benefit payments, among other things, for an alleged work-related injury. On August 29, 1990, plaintiff allegedly fell against a bed rail, injuring her back while assisting a nursing home patient. Plaintiff initially received treatment for her injury at Humana Hospital's emergency room. Subsequently, plaintiff was treated or evaluated by Dr. Kalifey and Dr. Mayeux, general practitioners, Dr. Po. and Dr. Blanda, orthopedic surgeons, Dr. Drerup and Dr. Bailey, neurosurgeons, and Dr. Osborne, a physical medicine and rehabilitation expert. At the time of plaintiff's injury, plaintiff's average weekly wage was $154.80. Plaintiff received indemnity benefits of $103.20 per week until November 27, 1991, when defendant terminated benefits. Plaintiff filed suit against defendant seeking the reinstatement of weekly benefits, coverage for additional surgery, and penalties and attorney's fees. Trial of the matter was held on October 28, 1992. By judgment rendered June 22, 1993, the hearing officer determined plaintiff was totally and permanently disabled and reinstated worker's compensation benefits from the date of termination with interest. The hearing officer further found the defendant was not arbitrary and capricious in disputing benefit payments and denied statutory penalties and attorney's fees.
Plaintiff appeals that portion of the judgment denying plaintiff's claim for penalties and attorney's fees. Defendant appeals the hearing officer's award of total and permanent disability benefits.

CAUSATION AND DISABILITY
Defendant alleges the hearing officer erred in holding the plaintiff is totally and permanently disabled. Specifically, defendant urges plaintiff did not prove by clear and convincing evidence that she suffered a mental injury or aggravation as a result of her work accident.
A claimant seeking total and permanent disability benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(2)(c). In order for a mental injury caused by a physical injury to be compensable under the act, a plaintiff must show by clear and convincing evidence that the physical injury caused the mental injury, the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. La.R.S. 23:1021(7)(c) and (d).
Concerning a pre-existing infirmity, the court in Bradley v. Manville Forest Products, 616 So.2d 280, 283, 284 (La.App. 2 Cir.1993), stated the following:
An employer takes his employee as he finds him and an employee's disability is compensable when a nondisabling preexisting condition is activated or precipitated into a disabling manifestation as a result of injury. Hughes v. Webster Parish Police Jury, 414 So.2d 1353 (La.App. 2d Cir. 1982).
An employee's preexisting disease or infirmity does not disqualify his workers' *695 compensation claim if the work related injury either aggravated and accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. When an employee shows that before the accident he had no manifest disabling symptoms and that commencing with the accident the disabling symptoms appeared and thereafter continuously manifested themselves, the accidental injury is presumed to have aggravated, accelerated or combined with the preexisting disease or infirmity to produce the disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985); Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1134 (La.1991).
Once an employee establishes the prerequisites to apply the presumption of a causal relationship, the employer has the burden of producing evidence to persuade the trial court that it is more probable than not that the work injury did not result from the accident or did not accelerate, aggravate or combine with a preexisting disease or condition. Dunn v. Allen Pulpwood, 565 So.2d 516 (La.App. 2d Cir.1990).
This is true even when an employee has a preexisting emotional stress or mental condition which is triggered by a work related accident. Chandler v. American and Foreign Insurance Company, 257 So.2d 825 (La.App. 3d Cir.1972); Carter v. Avondale Shipyards, Inc., 308 So.2d 472 (La.App. 4th Cir.1975).
Whether the claimant has carried his burden of proof and whether the plaintiff's testimony is credible are questions of fact to be determined by the trier of fact. The standard of review of the trial court's conclusion is under the manifest error-clearly wrong standard. Lubom v. L.J. Earnest, Inc., supra [579 So.2d 1174 (La.App. 2d Cir.1991)]; Rosell v. ESCO, 549 So.2d 840 (La.1989).
Great weight is given to the fact finder's factual conclusions, reasonable evaluations of credibility and reasonable inferences of fact. These will not be disturbed though the reviewing court may feel its own evaluations and inferences are equally reasonable. Lubom v. L.J. Earnest, Inc., supra; Bernard v. O'Leary Brothers Signs, Inc., supra [606 So.2d 1331 (La. App. 3d Cir.1992)]; Hayes v. Boh Brothers Construction, Inc., supra [606 So.2d 899 (La.App. 4th Cir.1992)].
In her written reasons for judgment, the hearing officer correctly summarized the pertinent medical evidence as follows:
Evidence introduced at trial indicates that Dr. Drerup performed a partial laminectomy at the L4-5 disc level with discectomy on January 3, 1991. On September 19, 1991, Dr. Drerup released plaintiff from his care, but as late as December 10, 1991, plaintiff still had marked spasm and decreased range of motion in the back, as noted by Dr. Mayeux. Straight-leg raising could be performed only at 10-15 degrees. Dr. Mayeux noted that medications had minimal effect and advised that plaintiff is need of additional surgery.
A myelogram and post-myelogram CT performed by Dr. Louis Blanda on June 16, 1992 revealed a moderate central and bilateral soft tissue protrusion at L4-5, more prominent to the right, affecting both L5 nerve roots. A similar protrusion at level L5-S1 was noted, consisting of a moderate central component with a bilateral-lateral extension affecting both S1 nerve roots, more prominent to the right than the left.
Dr. Blanda also noted in his progress note of July 2, 1992 that Ms. Autin was having some bladder and bowel difficulties. Dr. Blanda recommended surgery, i.e., a bilateral decompression at the last two levels with a stabilizing arthrodesis.
On July 14, 1992, Dr. Drerup reevaluated plaintiff. He also reviewed the myelogram and post-myelogram CT obtained by Dr. Blanda. Dr. Drerup's impression was that plaintiff suffered from chronic complaints of low back and bilateral lower extremity pain; status post-lumbar microdiscectomy L4-5 right; extreme symptom magnification; and myelography defects unexplained by post-myelogram CT. Dr. Drerup did not identify any pathologic process to account for plaintiff's bitter complaints of incapacitating low back and bilateral lower extremity pain and did not feel plaintiff would benefit from surgical intervention.
*696 It is also noted that Dr. Osborne felt that plaintiff had a long history of pre-existing psychiatric problems and marked symptom magnification. Based on physical impairments alone, Dr. Osborne assigned a 28% impairment rating. He reported that a normal individual would have been able to return to sedentary/light work but that plaintiff's psychological problems are severe enough that she is probably not employable. He stated that her prognosis is "practically nil."
Dr. Steven M. Bailey, neurosurgeon, examined plaintiff October 6, 1992 by order of the Office of Workers' Compensation for an independent medical examination. Dr. Bailey reviewed the myelogram and post myelogram CT and felt that they revealed evidence of extradural defect at the L4-5 and L5-S1 levels on the right side. He felt the L4-5 level might be scar formation and the L5-S1 level might be playing a small role in the right leg pain the plaintiff was experiencing. The plaintiff complained that her back pain greatly overshadowed the leg pain, however. Dr. Bailey saw clear embellishment of symptoms and acknowledged that previous psychological examinations by others revealed several personality disorders. He did not recommend surgery and felt, overall, that her chance of ever returning to gainful employment was virtually zero.
Medical records reflect that plaintiff also suffers from diabetes, angina and chronic asthma, neither of which is work-related. She is also being treated for depression.
Lionel Bordelon, vocational rehabilitation counselor, testified at trial on behalf of the defense that Ms. Autin could perform sedentary employment and earn 90% or more of her pre-accident wages. Mr. Bordelon did not consider psychological disability in making this determination.
The hearing officer then made the following factual conclusion:
As to the question of disability, it is undisputed that plaintiff underwent extensive psychiatric treatment before the accident at work occurred. The medical evidence does reflect that plaintiff suffered depression as the result of her accident. The evidence indicates that plaintiff's present mental problems, combined with her physical problems caused by the accident at work on August 29, 1990, preclude her from becoming gainfully employed. It is well recognized that the employer takes the employee as he find her. Plaintiff is entitled to the payment of permanent and total disability benefits, effective from the date temporary total disability benefits were terminated, with legal interest on all amounts unpaid.
We have reviewed the record in its entirety and in light of the above cited principles of law and jurisprudence, we find the hearing officer did not err in determining that plaintiff's pre-existing mental condition was aggravated by her work-related accident. Plaintiff testified she currently suffers from depression. This testimony is corroborated by plaintiff's current physician, Dr. Mayeux. There is no showing that, prior to the accident, plaintiff's mental problems made her unable to function in her job with the defendant. Despite her pre-existing mental disabilities, she functioned as a nurse's aide two years prior to her accident. Dr. Osborne testified by deposition that his evaluation of plaintiff's disability included ordering and reviewing plaintiff's psychological profile. Dr. Osborne explained that Dr. Staats, a psychologist, compiled the reports according to the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association. Records of Dr. Staats' evaluation entered into the record show plaintiff suffers from mental disorders. Further, Dr. Osborne opined:
I imagine this patient has had difficulty functioning for a long time. And if you take someone who's already impaired from a psychiatric problem, and then get some residual trauma, and then on top of that have some metabolic problems that get more difficult with time, such as diabetes. I mean diabetic people are going to have difficulty anyway. Schizophrenic people are going to have difficulty anyway. And now we have a back injury and some residual abnormality that was going to restrict what she could do. I think there comes a point where a patient just has too much to really function reasonably.
*697 We conclude the hearing officer did not err in finding plaintiff proved by clear and convincing evidence that she is entitled to total and permanent disability benefits.
PENALTIES AND ATTORNEY'S FEES
It is well settled that the worker's compensation act, being remedial in nature, is to be liberally construed in favor of the injured employee to effectuate the humane policies it reflects, Breaux, supra, at 290. However, the statutes imposing liability for penalties and attorney's fees are penal in nature, so they must be strictly construed to prevent employers from being penalized for taking close factual questions to court, or overly reluctant to rely in good faith on valid defenses. Landry v. Central Industries, Inc., supra, at 481-482 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La. 1992).
Lewis v. Malone & Hyde, Inc., 626 So.2d 531, 537 (La.App. 3 Cir.1993).
On the issue of statutory penalties and attorney's fees, the hearing officer stated:
Further, it is the finding of the Office of Workers' Compensation that the issues of surgery and continuing disability were reasonably controverted by the defense. Plaintiff had been released by her treating physician and functional capacity evaluations and examinations by other physicians indicated symptom magnification due to pre-existing psychological disorders. It was necessary for the Office of Workers' Compensation to obtain an independent medical examination to provide guidance in evaluating the expert opinions in this case. The defense is not found to be arbitrary in disputing the payment of benefits. For these reasons, statutory penalties and attorney fees are not awarded.
We find no error in the hearing officer's failure to award penalties and attorney's fees against the defendant. Considering the reports of Dr. Drerup, plaintiff's neurosurgeon, upon which the defendant apparently relied, the defendant relied upon credible information when it terminated plaintiff's temporary total benefits. Further, considering the disputed nature of the extent of plaintiff's disability and the causal connection to the accident, we do not find the defendant's action was arbitrary or capricious.

DECREE
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are to be paid one-half by the plaintiff and one-half by the defendant.
AFFIRMED.
LABORDE, J., concurs in part and dissents in part and assigns reasons.
LABORDE, Judge, concurring in part and dissenting in part.
I respectfully differ with my colleagues as to whether the law offers attorney fees as penal relief to plaintiffs under the circumstances. Regardless of the eventual outcome of these proceedings, one again must ask whether the time is not right for guidance to issue from the Supreme Court of this State on the too-important-to-ignore question of whether the laws of this state, favoring the "true" rehabilitation of injured workers (when possible) and originally intended for the benefit of the employee, can be subverted to partisan advantage.
The purpose of the provisions calling for penalties and attorney fees is to discourage attitudes of indifference to the injured employee's condition. Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119, 124 (La. 1982). As a threshold concern, it is incumbent upon the insurer to make a reasonable effort to ascertain the worker's exact condition at the time compensation benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 69 (La.1983).
In this case, the majority wishes to award no attorney fees although defendant's termination of benefits was premised upon the testimony of a physician who himself said he would defer to another, and to the testimony of a vocational "rehabilitation" expert who conceded that he did not take into account claimant's psychological problems in finding that claimant needed no rehabilitation.
*698 From where I sit, reliance on such flimsy grounds for terminating benefits is arbitrary and capricious per se. The time is right for the Supreme Court to decree that rehabilitation experts, required by law to be paid by the employer, must be selected by the claimant or by a nonpartisan. Otherwise, there will be nothing to prevent employers and insurers from continuing to employ such experts, contemplated by the law to assist the injured worker with his or her "rehabilitation" needs, for exclusively partisan litigation purposes. See, City of Crowley v. Clopha Comeaux, (La.Ct.App. 3d Cir. 1994), 637 So.2d 565, 567-568, n. 2.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] At trial, counsel for the defendant stated she represented Harris Management Company, which is doing business as Hessmer Nursing Home.