657 So.2d 443 (1995)
Loniel MAXIE, Plaintiff-Appellant,
v.
BROWN INDUSTRIES, INC., Defendant-Appellee.
No. 95-19.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*444 George Arthur Flournoy, Alexandria, for Loniel Maxie.
Robert Dean Hoover, Baton Rouge, for Brown Industries, Inc.
Before DOUCET, C.J., and THIBODEAUX and PETERS, JJ.
THIBODEAUX, Judge.
The plaintiff, Loniel Maxie, appeals a judgment of the Office of Workers' Compensation Administration in favor of his employer, Brown Industries, Inc., a self-insured corporation. Brown Industries terminated Mr. Maxie's disability benefits in March, 1992, when vocational rehabilitation counselors allegedly located jobs the claimant was qualified for which paid more than ninety percent of his pre-employment wages. The rehabilitation counselors recommended termination of future rehabilitation efforts because Mr. Maxie would not participate in the rehabilitation process.
After a trial on the merits, the hearing officer concluded Mr. Maxie failed to meet his burden of proof that he was entitled to either continued temporary total disability benefits or supplemental earnings benefits. The hearing officer further determined Mr. Maxie had been provided meaningful vocational rehabilitation, and was no longer entitled to continued rehabilitation services.
The hearing officer found Mr. Maxie did prove his entitlement to outstanding medical expenses. She did not assess any penalties or attorney's fees since she found the claim was reasonably controverted.
We affirm in part and reverse in part. Because we find the hearing officer did not apply the correct burden of proof, we have conducted a de novo review of the record. We affirm the ruling on Mr. Maxie's outstanding medical expenses and treatment. In all other respects, we reverse and find Mr. Maxie did not receive any meaningful vocational rehabilitation, and therefore he is eligible for rehabilitation and the continuation of temporary total disability benefits.

*445 ISSUES

The issues presented for review are whether the hearing officer applied the correct burden of proof in considering claimant's petition for supplemental earnings benefits, and whether the hearing officer erred by not awarding penalties and attorney's fees.

FACTS
On September 4, 1990, Loniel Maxie was employed by Brown Industries, Inc. as a roofer/laborer. He injured his back lifting a tar mop. He was a permanent employee, making $5.50 per hour. Mr. Maxie's on the job injury is not disputed.
Mr. Maxie lives with his mother in Florien, a rural, isolated community. He has not had a driver's license since 1988. He walked to work when employed by Brown Industries. He is a high school graduate, and can read and write, though the record does not indicate his level of proficiency. All of his previous work experience has been as a laborer.
Dr. Gordon M. Mead, his treating orthopedist, released Mr. Maxie to light to medium level work in April, 1991. Dr. Mead agreed with the functional capacity assessment which limited his lifting capacity to thirty-five pounds infrequently. He can frequently lift twenty pounds or less. Though Mr. Maxie may stand and walk without restriction, he should not sit for prolonged periods or climb.
The claims adjuster hired Glenn-Mar, a rehabilitation firm, to assist Mr. Maxie in his return to the job market. Mark Cheairs, a vocational rehabilitation consultant, met with Mr. Maxie in June, 1991, to assess his potential for return to work. Mr. Maxie told Mr. Cheairs of his transportation problem at this meeting. Mr. Cheairs did not do any educational testing, but reviewed Dr. Mead's medical evaluation. Based on this information and Mr. Maxie's previous work history, Mr. Cheairs felt he could immediately re-enter the job market, earning $4.25 to $5.00 per hour. Mr. Cheairs noted the claimant's location in a rural area was a significant obstacle to his employment.
Glenn-Mar conducted two job market surveys, which located several positions in Natchitoches, a one hour drive from Florien. The initial survey located four possible positions, counter attendant, two sales clerk positions, and a manager trainee position. A survey conducted nearer to the date of the trial located positions in Natchitoches as a processor, cashier, line server, salad maker, insurance agent, sales agent, and automobile salesman. The beginning wage for most of these positions was $4.25 per hour. The only job located in the Many/Zwolle area was a debit insurance route salesman position, which required the employee to collect insurance payments, to develop new clients, and to travel to clients' homes and businesses. This position paid $300.00 per week plus commission. The surveys did not list employers, their locations, or a description of the job duties. Some of these positions were part time; however, Mr. Cheairs testified he felt Mr. Maxie would be able to obtain full time employment at minimum wage.
Mark Cheairs testified he hoped Mr. Maxie would spend two to three days per week in Natchitoches looking for work. After Mr. Maxie devoted this time to the job search, then his firm was prepared to offer further vocational assistance.
Though Mr. Maxie repeatedly told the rehabilitation staff about his transportation problems, there is no indication they attempted to authorize transportation expenses or reimbursement. At the hearing, Mr. Cheairs characterized Mr. Maxie's transportation problem as a "social" problem. Eventually, Christine Tison, a vocational rehabilitation counselor at Glenn-Mar, recommended termination of rehabilitation efforts because Mr. Maxie was not taking full advantage of the services offered. Mr. Maxie testified he did not receive any help with job-seeking skills during his rehabilitation period.

LAW AND DISCUSSION
This state has long recognized the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). (Citations omitted).
*446 In Louisiana, when an employee suffers a compensable injury which precludes him from earning wages equal to those earned pre-injury, then he shall be entitled to prompt rehabilitation services. La.R.S. 23:1226(A). Temporary total disability benefits paid pursuant to La.R.S. 23:1221(1) shall include such period as the employee may be receiving training or education under a retraining program pursuant to this section. La.R.S. 23:1226(F); Thibodeaux v. Robinswood School, 93-1130 (La.App. 3 Cir. 4/6/94), 635 So.2d 585, writ denied, 94-1188 (La. 6/24/94), 640 So.2d 1355.
Though Mr. Maxie requests supplemental earnings benefits, we find he is eligible for temporary total disability benefits under the provisions of the vocational rehabilitation statute. We may render any judgment which is just, legal, and proper on the record for appeal. La.Code Civ.P. art. 2164. For the following reasons, we find Mr. Maxie is eligible for meaningful rehabilitation and, therefore, is also eligible for continued temporary total disability benefits while he is receiving such vocational rehabilitation. If he can re-enter the job market without retraining as contemplated by section 1226, then he will be eligible for supplemental earnings benefits based on zero earnings as our de novo review of the record amply supports his diminished wage earning capacity within La.R.S. 23:1221(3)(a).
Our supreme court in Pinkins instructs us not to damage the spirit, if not the letter, of the workers' compensation laws. The very purpose of supplemental earnings benefits is to compensate the injured employee for lost wage earning capacity which results from his accident. Pinkins, 619 So.2d at 55. In this case, the actions of the hearing officer and the vocational rehabilitation experts damage both the spirit and the letter of the workers' compensation statutes. Pinkins further instructs Louisiana courts to consider a totality of factors to determine a realistic appraisal of access to employment. These factors include work-related disability, age, literacy level, race, and the claimant's overall ability to perform. Pinkins, 619 So.2d at 57. Pinkins tells us that it is appropriate to consider a claimant's social problems in order to uphold the spirit of the workers' compensation statute. Mr. Maxie was not afforded such consideration by the vocational rehabilitation experts in this case.
The rehabilitation experts provided Mr. Maxie with a list of potential employers in Natchitoches. The list did not include names or addresses of employers, and one of the lists was not even provided to Mr. Maxie or his counsel until the day of the hearing. Meaningful rehabilitation is not accomplished by the mere furnishing of a list of possible jobs. See Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733.
Vocational retraining was not attempted, according to Mr. Cheairs, because he felt there was gainful employment in the general labor market, although Mr. Maxie was not made aware of those opportunities. Furthermore, educational testing was not considered. Cheairs assumed that Mr. Maxie's past employment experiences demonstrated his ability to work in an unskilled or semi-skilled environment, while at the same time opining that a job as an auto or insurance salesman would be a "real good job match." The record paints a pretty obvious picture that efforts to rehabilitate were nonexistent or minimal, at best.
When the employee is not working or is earning less than he is able to earn as the result of a job-related disability, then it is the employer's burden to establish earning capacity. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La.1989); Pinkins, 619 So.2d at 56. The hearing officer in this case determined Mr. Maxie had not met his burden of proof and, therefore, was not entitled to either TTD or SEB. Mr. Maxie established he was injured in the course of his employment; he will be unable to return to his former employment; and his wage earning capacity was diminished as a result of his injury. In this case, Brown Industries did not meet its burden of proof to establish Mr. Maxie's wage earning capacity.
The record does not establish that Mr. Maxie was able to perform work which was offered to him or which was proven available to him in his or the employer's community or reasonable geographic region. *447 La.R.S. 23:1221(3)(c)(i). When considering the totality of factors facing Mr. Maxie's access to employment, several important issues were ignored.
Dr. Mead did approve the listed jobs for Mr. Maxie. He was physically able to perform those types of jobs within his physical limitations. However, there is no proof in the record that these jobs were offered to him. Additionally, the record fails to disclose that these jobs were proven available to Mr. Maxie either in his community, in his employer's community, or in the reasonable geographic region. For Mr. Maxie, an inhabitant of rural Louisiana, without a car or driver's license, jobs located approximately one hour from his home are not within his reasonable geographic region. This court has previously noted it seems unreasonable to expect someone suffering with chronic back pain to drive 80 to 100 miles per day for a job that pays $125.00 to $150.00 per week. Kennedy v. Commercial Union Insurance Company, 572 So.2d 319 (La.App. 3 Cir.1990).
In short, a labor market survey simply does not equate with availability. As Pinkins points out, our courts and the applicable burdens of proof do not exist in a vacuum. Whether a job is available in a reasonable geographic region may depend on such factors as the nature of the region, whether in a city or rural area, whether the claimant drives or has a license, and the availability of public transportation.
Because there was no educational testing performed, the record is unclear whether Mr. Maxie is truly qualified for a position such as an insurance salesman. The transition from laborer/roofer to insurance salesman certainly requires more extensive rehabilitation than has been offered Mr. Maxie at this point. The Standards and Ethics handbook issued by the Board of Examiners for licensed professional vocational rehabilitation counselors recognizes the need to assess the client's education and specialized training, whether formal or informal, as part of the first step in the evaluation process. Section B(6). Section B(7) requires the determination of the client's interests, reading skills, intelligence, academic achievement, primary aptitudes, and transferable skills.
The ethical guidelines do allow a counselor to select appropriate tests and procedures, depending on the needs of the client and the situation. The stated goal of the licensed rehabilitation counselor is to return a client to suitable, gainful employment. Preamble. In order to reach this goal, counselors must address a number of factors to determine the client's realistic access to employment. These counselors did not afford Mr. Maxie such an opportunity. Mere sham rehabilitation will not be recognized by this court to defeat an injured worker's claim.
The Louisiana Rehabilitation Counselor Licensing Act, La.R.S. 37:3441 et seq., speaks of "... a client-counselor relationship in which the counselor assumes responsibility for knowledge, skill, and ethical considerations needed to assist individuals, groups, organizations or the general public ..." La. R.S. 37:3443(2). Mr. Cheairs testified that Mr. Maxie was his client, although he was retained by the Louisiana Employers Safety Association with which Mr. Maxie's employer, Brown Industries, is associated. In advancing this relationship, the rehabilitation counselor assists in defining vocational goals and designing an action plan based on a client's interests, abilities, aptitudes, and needs. La.R.S. 37:3443(3)(a). The record is manifestly silent on any of these activities. What it does show is that Mr. Cheairs and Ms. Tison perfunctorily met with Mr. Maxie, their "client," for a total of 3.5 hours and spent considerably more time doing reports and labor market surveys.
Our workers' compensation framework mandates that the employer is responsible for selecting a vocational counselor to assist an injured worker. La.R.S. 23:1226(B)(3). The fact that a counselor, such as Mr. Cheairs or Ms. Tison, is paid by the employer appears to create an irreconcilable conflict where, as here, the employer's objective is to terminate disability benefits and deny meaningful rehabilitation to an employee who is seeking those benefits and who is being counseled by the employer-paid expert. One cannot serve two masters whose interests diverge.
*448 This so-called "client-counselor" relationship is a subterfuge whose apparent purpose is to advance the interests of the entity which is paying for the services. It is no more than a cruel diversion from the reality of the goals it ought to advance. Regrettably, the use of vocational rehabilitation "experts" has become a forensic tool on behalf of employers who use it to betray the salutary principles and obfuscate the ameliorative objectives of our workers' compensation laws. See, e.g., Autin v. Hessmer Nursing Home, 93-1492 (La.App. 3 Cir. 6/1/94), 638 So.2d 693 (Laborde, J., dissenting), writs denied, 94-1632, 94-2212 (La. 10/7/94), 644 So.2d 634; City of Crowley v. Comeaux, 93-1116 (La.App. 3 Cir. 4/6/94), 638 So.2d 658, 661; writ denied, 94-1184 (La. 6/24/94), 640 So.2d 1355.
The employee in our workers' compensation scheme forfeits rights under tort law to "[accept] a more modest claim for bare essentials, payable ... regardless of the employee's or employer's fault and with a minimum of dispute or delay." Roberts v. Sewerage and Water Board, 92-2048 (La. 3/21/94), 634 So.2d 341, 343-44. The economic disparity between an employer and an employee who submits a claim for "bare essentials" is such that an injured employee cannot match the support of "experts" hired by employers. Legislative efforts to achieve equity and fairness in the workers' compensation marketplace become meaningless when, as in this case, the "client-counselor relationship" is a euphemism for employee subversion.
Vocational rehabilitation is designed to address and to alleviate certain social problems. A myriad of societal problems may limit an injured worker's re-entry into the work force. In this case, the counselors' attitudes only serve to exacerbate these social problems. At a minimum, Mr. Maxie should be considered eligible for true vocational rehabilitation. He may be able to be retrained at a local vocational-technical school; he may be interested in another skill or trade in line with his physical restrictions.
The counselors in this case did nothing to effectuate Mr. Maxie's rehabilitation. Their efforts did not correlate with their stated objective of assisting Mr. Maxie to attain "vocational independence." Instead, they were used for "exclusively partisan litigation purposes." Autin, 638 So.2d at 698 (Laborde, J., dissenting).

PENALTIES AND ATTORNEY'S FEES
The rule is well settled that a workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld or terminated arbitrarily, capriciously, or without probable cause. La.R.S. 23:1201; 23:1201.2. To avoid the imposition of penalties, an employee's right to compensation has to be reasonably controverted. La.R.S. 23:1201(E).
As discussed above, Mr. Maxie received deficient rehabilitative efforts, and Glenn-Mar initiated its services with an inadequate assessment of his capabilities, entitling him to statutory penalties. Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3 Cir.1993). Where an employer relies on competent medical advice, a worker is not entitled to statutory penalties but, in this case as in Hopes, the facts do not lend themselves to this defense. The services provided by Glenn-Mar were woefully inadequate to address Mr. Maxie's rehabilitation needs. The testimony of Mark Cheairs indicates he knew Mr. Maxie could not earn 90% or more of his prior wages. According to medical information in the employer's possession, Brown Industries knew Mr. Maxie was injured on the job, was partially disabled by his injury, and could not return to his former occupation or wage level. There is no justification for terminating benefits when the employer has such knowledge and information. Id.
We hold Brown Industries' refusal to pay temporary total disability benefits and to timely pay medical expenses to be arbitrary and capricious. Under La.R.S. 23:1201(E), Mr. Maxie is entitled to penalties amounting to twelve percent of all unpaid medical expenses and unpaid compensation installments from the date of termination of benefits until compensation commences.
Mr. Maxie is also entitled to an award of attorney's fees under La.R.S. 23:1201.2. We find $8,500.00 to be reasonable in view of the *449 efforts put forth by Mr. Maxie's counsel in preparing this case at both the trial and appellate levels.

CONCLUSION
The hearing officer committed a legal error by not applying the correct burden of proof. Based on our de novo review of the record, we conclude Mr. Maxie did not receive meaningful rehabilitation as required by the workers' compensation statutes. He is entitled to meaningful rehabilitation, and to temporary total disability payments while receiving such rehabilitation. Mr. Maxie is also awarded statutory penalties of 12% on all unpaid medical expenses and compensation installments from the date of termination of benefits and to attorney's fees of $8,500.00.
All costs in the proceeding below and on appeal are assessed to the defendant, Brown Industries.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.