824 So.2d 466 (2002)
VERMILION PARISH POLICE JURY
v.
Darren WILLIAMS, Sr.
No. 02-12.
Court of Appeal of Louisiana, Third Circuit.
July 3, 2002.
*467 Christopher Richard Philipp, Attorney at Law, Lafayette, LA, for Vermilion Parish Police Jury.
Christopher Alan Edwards, Edwards Law Firm, Lafayette, LA, for Christopher A. Edwards.
Patrick J. Hanna, Rabalais, Hanna & Hays, Lafayette, LA, for Work Enterprises, Inc.
Julian Louis Gibbens, III, Doucet & Speer, Lafayette, LA, for Darren Williams, Sr.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
YELVERTON, J.
This is an appeal from the Office of Workers' Compensation. The present dispute was initiated by the Vermilion Parish Police Jury when it filed a claim alleging that it was not responsible to its employee, Darren Williams, for treatment of his Bell's palsy condition. It also alleged that Williams should receive supplemental earnings benefits as opposed to the temporary total disability benefits he had been *468 receiving. In a reconventional demand, Williams sought approval of a multi-disciplinary pain program and payment of medical expenses related to a fall which occurred a couple of years after his work-related accident. He also sought penalties and attorney fees.

FACTS
The facts of this case are not in dispute. We quote from the trial court's reasons for judgment.
On April 8, 1996, Williams was employed with the [Vermilion Parish] Police Jury as a road foreman. A tire blew out on the vehicle he was driving on that date. The vehicle ran into a ditch, and Williams hit the steering wheel. He received emergency treatment at Abbeville General Hospital, then was seen the following day by the employer's doctor, Dr. Howard Alleman. These early reports note primary complaints with the right hip, groin and leg. He began treating with Dr. John Cobb, an orthopedic specialist, in May, for complaints including headaches, aching in the neck, low back, burning through the hip and leg to the thigh, and problems with the left ankle. An MRI was obtained and was normal. Dr. Cobb prescribed physical therapy and SI joint injections. In October 1996, Dr. Cobb referred Williams to Dr. Daniel Hodges for conservative treatment.
Dr. Hodges undertook treatment, and by March 1997 wanted Williams to try working 4 hours per day at light duty. Williams applied for part-time work at several places, but was not hired. In April 1997 Dr. Hodges referred Williams to Dr. Charles Aprill, and Williams saw Dr. Aprill on June 18. Dr. Aprill performed a right SI joint arthorogram and injection followed by a CT scan, which essentially ruled out right sacroiliac joint abnormality. Dr. Aprill's records reflect that on June 26, Williams woke up with a really bad headache and the left side of his face was drooping. Williams was subsequently diagnosed with Bell's Palsy.
Though the doctors had initially been optimistic about Williams' chances for returning to work, his physical complaints have never significantly improved. Further, his depression and anxiety escalated. He treated with Dr. Jimmie Cole, a psychologist, and completed Dr. Cole's Coping Skills program. He is also currently being treated by Dr. Charles Bramlet, a psychiatrist who specializes in chronic pain patients. Dr. Bramlet has recommended a program similar to Dr. Cole's Coping Skills program, but which Dr. Bramlet says is more comprehensive that [sic] Dr. Cole's program.
Vocational rehabilitation was begun in 1998. Karen Herron was the vocational counselor assigned to assist Mr. Williams. Two or three job possibilities were identified, but the most promising, a job with an ice company, turned out to be beyond Mr. Williams' physical restrictions. Ms. Herron acknowledged several barriers to Mr. Williams' return to the workforce: his limited education, his physical restrictions, and the fact that he is not driving.
As it became apparent that it would be difficult to find suitable employment possibilities for Mr. Williams, he was offered a position with Work Enterprises, Inc. (WE, Inc.). WE, Inc. is an enterprise which provides "homebound" work to injured workers. The work consists of such activities as packaging bath salts and confetti. Ms. Herron testified that although the DOT lists the jobs as light, they are actually sedentary. Tools and materials are delivered to the injured worker at his home, and *469 the injured worker is able to work at his own pace. There are no requirements set for hours worked or production, but the worker is guaranteed $5.15 per hour, 30 hours per week. The workers can receive raises or increased pay, depending on circumstances. Employment with WE, Inc. is not open to the general public. WE, Inc. is paid up front by the insurer or employer of the injured worker. The items produced are sold to various retail outlets for sale to the public. Mr. Williams refused the position offered with WE, Inc. His benefits have been paid without interruption. The employer requests a reduction in benefits based upon the WE, Inc. positions which were approved by Dr. Hodges and Dr. Bramlet.
After the trial on August 3, 2000, the workers' compensation judge ruled that the Bell's palsy was not related to Williams' work injury. She also denied his request for the pain program recommended by Dr. Bramlet, finding that it was duplicative of services that he had already received. The workers' compensation judge found that Williams remained temporarily totally disabled and that an ankle injury he suffered on November 10, 1998, was related to the work accident. Penalties and attorney fees were awarded for failure to timely investigate and pay the expenses of the ankle injury.
The Police Jury appeals the findings relating to Williams' disability status and the ankle jury. Additionally, an amicus curiae brief has been filed on behalf of Work Enterprises, Inc. (WE, Inc.), who was not a party below, arguing that rulings by the workers' compensation judge will have significant effects on its business.
Williams discharged Christopher Edwards, his attorney at the trial level, after trial but before the appeal, and hired new counsel who represents him regarding this appeal. The former attorney, Edwards, filed a brief requesting relief on his petition for intervention which sought recognition of his attorney fee and expenses lien. The intervention, as well as his brief on appeal, complained of the amount of attorney fees awarded, and the brief on appeal requested additional attorney fees for the appeal. The workers' compensation judge has yet to hear or rule on the intervention, which was filed long after the trial and only a few days before the trial judge's decision and judgment.
We are unable to consider this attorney's claims. Mr. Edwards initially filed an appeal on October 5, 2001. Subsequently, he sent a letter to the Office of Workers' Compensation seeking to convert his appeal to an answer. Then on December 17, 2001, he dismissed the appeal. Louisiana Code of Civil Procedure Article 2133(A) requires that an answer to the appeal must be filed no later than 15 days after the return day or lodging of the record, whichever is later. No formal answer was ever filed in the trial court or the court of appeal. Furthermore, no filing fees to answer the appeal have ever been paid. Therefore, having dismissed his appeal and never having perfected his answer to the appeal, Mr. Edwards has lost the right to have us consider his assignments of error. However, this in no way affects his right to be heard on his intervention claim still pending in the trial court.
We shall now consider the Police Jury's assignments of error regarding temporary total disability and the ankle injury.

DISABILITY
The Police Jury argues that the trial court erred in finding that Williams was entitled to temporary total disability (TTD) benefits as opposed to supplemental earnings benefits (SEB). Specifically, it *470 argues that it proved that there were jobs available and offered to Williams, specifically the job offered by WE, Inc. It argues that work offered by WE, Inc. was meaningful and helpful in returning an injured employee back to the work force, and that such work builds an injured employee's self-confidence. The Police Jury submits that the trial court should have accepted this offer of employment and put Williams on SEB.
As mentioned earlier, WE, Inc. has filed an amicus curiae brief with this court. WE, Inc. argues that the workers' compensation judge's ruling regarding wage earning capacity is unconstitutional in its application and that it was not afforded fundamental due process rights at the time of trial. WE, Inc. asks this court to reverse the portion of the workers' compensation judge's opinion involving earning capacity or, in the alternative, allow remand of this matter in order to allow it to seek leave to intervene.[1]
WE, Inc. seeks relief other than that requested by parties to these proceedings. "The law is well-settled that issues not raised by the litigants cannot be raised by amicus curiae on appeal." U.S. Fidelity & Guaranty Co. v. Victory Land Co., Inc., 410 So.2d 359, 361 (La.App. 4 Cir.), writ denied, 412 So.2d 1113 (La.1982). "Also, relief beyond that which is sought by the parties cannot be requested by amicus curiae." Id. The trial judge made no mention of WE, Inc. in her judgment. As to disability and entitlement to benefits, the trial judge found that Williams was temporarily, totally disabled, and entitled to indemnity benefits in the sum of $250.08 per week until further orders of the court. Therefore, we will consider WE, Inc.'s, brief only insofar as it relates to the Police Jury's argument that Williams should have been awarded SEB based on the job offers from Work Enterprises which Williams never accepted.
A workers' compensation judge's finding regarding disability is a factual finding which should be given great weight and should not be overturned absent manifest error. Bolton v. Grant Parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882. Pursuant to Louisiana Revised Statute 23:1221(1), TTD benefits are proper when the claimant is unable to engage in any self-employment or occupation for wages. Once an injured worker reaches maximum medical improvement and is able to return to work, even in pain, then he is no longer eligible for TTD benefits, but is relegated to SEB benefits if he is unable to earn 90% of his pre-accident wages. Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792.
The reasons for judgment make it clear that the workers' compensation judge found that Williams continues to be temporarily, totally disabled, and that the judge based that finding upon Dr. Bramlet's testimony. At his March 28, 2000 deposition, Dr. Bramlet testified that Williams was unable to work due to his many problems which included the palsy, headaches, back pain, neck pain, family history, social abilities, and education. One of Williams' biggest problems was his depression and anxiety. He further testified that Williams' back pain and psychological problems associated with it would alone be disabling.
The workers' compensation judge recognized that evidence was introduced by the Police Jury to support its position that Dr. *471 Bramlet approved the WE, Inc. jobs for Williams. However, as noted by the workers' compensation judge, these job descriptions were presented to Dr. Bramlet only two weeks after his deposition and it is hard to tell whose signature is on the line. Furthermore, a letter was written by Dr. Bramlet, after he allegedly approved these jobs, on June 5, 2000, at which time he stated that, "it is to [sic] late to rehabilitate Mr. Williams both from a physical and psychological standpoint to gain [sic] employment.... I do agree with Dr. Blackburn that the chance of him going back to gainful employment is very low." Therefore, there is a serious question of whether Dr. Bramlet had actually released Williams to return to work. Even Dr. Hodges testified at his deposition on March 28, 2000, that it was questionable whether Williams could perform light-duty, sedentary work. He opined that he is still suffering from significant anxiety and depression, and he was not certain if Williams' mental status would allow him to do anything.
It appears that Williams' pain from his initial work-related accident in addition to his psychological problems are what prevented his employability, in addition to his other limited abilities. We cannot say that the workers' compensation judge was manifestly erroneous in finding that Williams continued, at the time of trial, to be temporarily, totally disabled from a medical standpoint and not able to engage in any gainful employment. Therefore, it is unnecessary for us to address whether what was offered by WE, Inc. would satisfy the Police Jury's burden of establishing Williams' entitlement to SEB.

ANKLE INJURY AND ASSOCIATED PENALTIES AND ATTORNEY FEES
The Police Jury claims that the trial court erred in finding that Williams' November 6, 1998 ankle injury was related to his work accident. It argues that it is more probable that he fell and twisted his ankle because of the symptoms of Bell's palsy.
Obviously, there were two potential explanations for Williams' 1998 fall. We find that the record supports the workers' compensation judge's finding that the ankle injury was related to the fall. The emergency room record from Our Lady of Lourdes Regional Medical Center, where Williams' was treated for his ankle injury, clearly relates the ankle injury to Williams' work accident as follows: "This 32-year-old gentleman has a problem with his back which results in weakness in his legs. He uses a cane all the time. His right knee gave out and fell down and kind of bumped it and twisted his ankle." It is Williams' right leg that has been giving him problems since the work accident. Bell's palsy affected his left side, not his right side.
The Police Jury also argues that penalties and attorney fees should not have been awarded for failure to pay the medical bill related to the ankle injury. "The workers' compensation judge has great discretion in the award of penalties and attorney fees, and his decision will not be disturbed unless it is clearly wrong." Gray v. Premier Staffing, 99-197, p. 7 (La.App. 3 Cir. 6/2/99), 736 So.2d 340, 344.
Recognizing that penalties and attorney fees can be awarded for the employer's failure to pay medical benefits within sixty days after it receives written notice, the Police Jury claims that it requested the medical records pertaining to the ankle injury but never received them until 30 days before the trial. La.R.S. 23:1201(E) and (F)(2).
Pursuant to Louisiana Revised Statute 23:1201(E) Williams' attorney sent a copy *472 of the medical report concerning the ankle injury on November 12, 1998. The letter also provided notice that the hospital had been instructed to bill the workers' compensation insurer because the fall was caused by weakness in his legs and back. This letter was followed by another letter on November 17, 1998, requesting payment of $353.34 which represented charges for the ankle injury. The bill from the hospital was attached to the letter. In response to this letter, Management Services USA, who was managing the claim for the Police Jury, wrote Williams' attorney informing him that it was in the process of obtaining medical records to determine if the fall was related to the accident. Williams' attorney then sent another letter on January 21, 1999, requesting payment of the hospital bill. A final letter requesting payment was sent on April 21, 1999.
Lori Francis, who worked for Management Services, testified that the company never received the medical records until the Police Jury's attorney sent the records to the company. The records were received on June 2, 2000 yet, the bill still remained unpaid at the time of the hearing in August 2000.
We agree with the trial court that Williams is entitled to attorney fees pursuant to Louisiana Revised Statute 23:1201. Management Services made only one request for Williams' medical records. It does not appear that Management Services even followed up on its requests for the records when it did not receive them. Furthermore, even after the records were received, the claim still remained unpaid for 60 days. Once these records were received, which clearly related the ankle injury to Williams' work accident, the bill should have been paid.
For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Vermilion Parish Police Jury.
AFFIRMED.
THIBODEAUX, J., specially concurs.
THIBODEAUX, J., specially concurring.
I fully agree with the majority opinion, but add these additional concurring comments to express my concerns with the rehabilitation efforts of the employer.
As we observed, Dr. Bramlet testified that it was too late to rehabilitate Mr. Williams from a physical and psychological standpoint. The medical testimony as a whole suggests rather strongly that Mr. Williams may not be able to perform even sedentary work. Nevertheless, even after his debilitated medical condition was documented, the Vermilion Parish Police Jury persisted in trying to get him into the labor market. That is laudable. What is not laudable is the character of the work given to Mr. Williams through Work Enterprises, Inc.
The activity at Work Enterprises, Inc. was not designed to rehabilitate. Rather, it was designed to undermine the plaintiffs claim to temporary total or, perhaps, permanent total disability. If an injured worker is entitled to temporary total disability under La.R.S. 23:1221(1)(a) or permanent total disability under La.R.S. 23:1221(2)(a), he receives 66 2/3 percent of his average weekly wages during the period of such disability. However, one who is unable to earn 90% or more of his preinjury wages is entitled to supplemental earnings benefits under La.R.S. 23:1221(3)(d) for a maximum of 520 weeks.
To accomplish its goal of getting Mr. Williams qualified for supplemental earnings benefits (SEB) and not temporary total disability (TTD) benefits, the Vermilion Parish Police Jury found ways to subvert *473 the humane and salutary purposes of the Workers' Compensation Act. It implemented unabashedly brazen employment techniques to abrogate the objectives of La.R.S. 23:1226. The technique employed by the Vermilion Parish Police Jury in complicity with Work Enterprises, Inc. is another example of workers' compensation creativity deserving of the equivalent of an Oscar award. Ms. Herron, a vocational rehabilitation consultant who worked with Mr. Williams, testified that she found it difficult to find him employment with his limitations. When Ms. Herron could not find employment within the regular work force, she approached Work Enterprises. The director of Work Enterprises, Jack Arceneaux, explained that Work Enterprises is designed as a home-bound program for people with physical disabilities or who live in rural areas and could not go into the workplace. It is not available for employment to the general public. That is, people off the street cannot apply for employment with Work Enterprises. An employee begins "work" at Work Enterprises on a ten-month training program. This ten month period is funded by the insurance companies or the employers. There is no cost to Work Enterprises. The insurance company or employer is responsible for an employee's salary, workers' compensation insurance, liability insurance, taxes, training, and various cost items such as pick-up and delivery, telephone and postage. The employee is paid $5.15 per hour and is guaranteed thirty hours per work regardless of how long the employee works or how many items are actually produced during the ten-month "training period." The employee is paid even if he produces nothing during the ten-month training period. After the ten-month training period, Work Enterprises then begins paying the employees on its own.
Work Enterprises offered four jobs to Mr. Williams. They included: (1) bath salt cup and bag assembler; (2) confetti cup and bag assembler; (3) nylon netting, plastic wrap, and ribbon cutter; and (4) label technician. The products needed to perform these jobs are delivered to the employee who has access to a toll-free number when the items are ready to be picked up. All parties, including the vocational rehabilitation consultant, agree that Mr. Williams was not employable but for these Work Enterprises' jobs. The Police Jury contends that this was a valid job offer because it met all of the requirements of Banks v. Industrial Roofing and Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551.
Banks, however, requires the existence of a suitable job. The so-called jobs offered to Mr. Williams were no more than a form of private welfare. They were not offers of "suitable employment." The first ten months of the "training period" are completely funded by the insurance company or employer. Thus, Work Enterprises is in reality not employing the worker for the first ten months. Moreover, the money received by the employee is not dependent upon the amount of work he produces or the number of hours he works. The payments, therefore, to an employee who is placed with Work Enterprises, Inc. are not actually earned. The wages are a mere gratuity or benevolence because the employee is required to do nothing to earn his pay.
Louisiana Revised Statutes 23:1226 entitles an injured worker to prompt and meaningful rehabilitation. A vocational rehabilitation counselor has an ethical obligation to assist in the rehabilitation effort and to humanize the dictates of Section 1226. In the Preamble to the Standards and Ethics Handbook issued by the Board of Examiners for licensed professional vocational *474 rehabilitation counselors, the stated goal of a licensed rehabilitation counselor is to return a client to suitable, gainful employment. See generally, Maxie v. Brown Industries, 95-19 (La.App. 3 Cir. 5/31/95); 657 So.2d 443, writ denied, 95-1630 (La.10/6/95); 661 So.2d 469. The obligation is certainly not to refer him to an entity like Work Enterprises whose purpose is to advance the interests of the employer and the insurer, not the interests of the injured worker. The workers' compensation scheme is intended to benefit the worker because it is the worker who gives up the right to sue in tort for the benefit of not having to prove negligence. In this case, as in Maxie, the efforts of the vocational rehabilitation counselor, Ms. Herron, and Work Enterprises, Inc. were "no more than a cruel diversion from the reality of the goals [they] ought to advance." Id. at 448.
After observing the growing abuse of vocational rehabilitation, this court attempted to offer guidance to what is proper rehabilitation "to avoid further violations and manipulations of the service." Livings v. Langston Cos., 96-636, p. 13 (La.App. 3 Cir. 12/5/96); 685 So.2d 405, 413. That judicial guidance has apparently gone unheeded by outfits like Work Enterprises, Inc. It appears that the only lesson learned was the relationship between rehabilitation, the receipt of wages, and entitlement to SEB. In other words, if an employee is working and earning wages, he may be entitled to SEB, not TTD. That is exactly what was sought to be accomplished here by Work Enterprises, Inc. and the rehabilitation counselor.
Livings explained that:
[t]he ultimate objective [of rehabilitation] is placement of the worker back into a competitive position in the labor market so that once employment opportunities are reasonably maximized and the costs to the employer, and to the workers' compensation system, generally, are minimized. Only then will conformance to the laudable ideals of rehabilitation be truly effectuated.
Id. at 414. Again, despite this specific admonition, employers and insurers continue to work in complicity with companies like Work Enterprises, Inc. to subvert the system. That is regrettable and intolerable.
Our circuit has observed and spoken out against "sham rehabilitation" in a number of cases in addition to Maxie and Livings. See, e.g., Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/97); 690 So.2d 792; Batiste v. Capitol Home Health, 96-799 (La.App. 3 Cir. 5/7/97); 699 So.2d 395; City of Crowley v. Comeaux, 93-1116 (La. App. 3 Cir. 4/6/94); 638 So.2d 658, writ denied, 94-1184 (La.6/24/94); 640 So.2d 1355; Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3 Cir.1993). We have spoken very clearly and decisively. There is simply no reason for an employer not to be knowledgeable with at least some of the basic principles of proper rehabilitation and the avoidance of such malevolent rehabilitative attempts as we see in this case.
The activities of the vocational rehabilitation counselor and Work Enterprises, Inc. are more of an attempt to establish "sham rehabilitation" to get Mr. Williams, who appears to be headed in a direction of permanent total disability, established on SEB which is limited to 520 weeks. While Mr. Williams may be trained and able to work at the Work Enterprises "job," this training does not provide him with the ability to gain competitive employment in the general labor market. The workers' compensation judge was correct when she observed that this activity was "simply a shifting of the workers' compensation obligation, or the supplying of a substitute for *475 the payment of workers' compensation benefits."
NOTES
[1] The trial court, finding no evidence of any actual worth for the services performed by WE, Inc. employees, determined that its position was "simply a shifting of the workers' compensation obligation, or the supplying of a substitute for the payment of workers' compensation benefits."