KNOLL, J.,
additionally concurring.
Ill agree with the majority, but write separately to express my concerns with the legal regime set up to provide our State’s injured workers with vocational rehabilitation services. In my view, this system does not currently serve the best interests of our injured workers and impacts the quid pro quo that is the foundation of the Workers’ Compensation Act.
First, I subscribe to the majority opinion because there is no record evidence establishing a dispute between Hargrave and Diaz concerning the quality of Diaz’s services, or that Diaz, in this case, failed to comply with the ethical canons governing vocational rehabilitation counselors, La. Admin. Code tit. 46, §§ 1600-1611. I would not, however, foreclose the possibly of a hearing officer imposing curative conditions similar to, or mirroring, the Crain Brothers conditions in a case where such evidence exists.
A hearing officer, like a judge, should have the discretion to fashion an appropriate remedy in the event an injured worker files a claim under La. Rev. Sat. § 23:1226(B)(3)(a). If a dispute arises over the quality of a vocational rehabilitation counselor’s services, then the injured employee has a statutory right to file a claim with the OWC. La.Rev.Stat. § 23:1226(B)(3) (a). Under this provision, a hearing officer is the arbiter of these disputes, a role that brings him or |?her into the ordinary ebb and flow of litigation. Moreover, our courts of appeal generally require hearing officers, when resolving disputes arising under the Workers’ Compensation Act, La.Rev.Stat. § 23:1310.3(F), to conduct themselves as if they were district court judges. 14 H. Alston Johnson III, La. Civ. L. Treatise, Workers’ Compensation Law and Practice § 385, p. 399 (5th ed.2011).
In sum, I agree that a hearing officer does not have carte blanche authority to impose conditions on a vocational rehabilitation counselor prior to an actual dispute arising over that counselor’s services. The language of La.Rev.Stat. § 23:1226(B)(3)(a) makes this point clear. However, if record evidence of a dispute existed in this, or any other case, then I believe the imposition of curative conditions, though not expressly authorized under § 23:1226, would be an appropriate remedy, falling well within a hearing officer’s discretion.
Additionally, I write to express my displeasure with the way in which La.Rev. Stat. § 23:1226 impacts the quid pro quo underlying the Workers’ Compensation Act. This quid pro quo is a compromise in which the employer is granted immunity from tort claims, “and, in return, the employee forgoes his right to full damages for his injury in exchange for limited but certain compensation.” Austin v. Abney Mills, Inc., 01-1598, p. 10 (La.9/4/02); 824 So.2d 1137, 1144-45. This compromise is the “quintessential characteristic of the workers’ compensation movement.” O’Re-gan v. Preferred Enterprises, Inc., 98-1602, p. 15 (La.3/17/00); 758 So.2d 124, 134. In its current form, La.Rev.Stat. § 23:1226 upsets the delicate balance struck by this compromise, tilting the scales in favor of employers to the detriment of our State’s injured workers.
Throughout the 1990s, and well into the 2000s, our courts, and in particular the Third Circuit, adjudicated numerous “sham rehabilitation” cases. See e.g., Broussard v. Lafayette Parish School Bd., 05-575 (La.App. 3 Cir. 4/5/06); 926 So.2d 713, unit denied, 06-1044 (La.6/23/06); 930 So.2d 983; Vermillion Parish Policy Jury v. Williams, 02-12 (La.App. 3 Cir. 7/3/02); 824 So.2d 466. In these cases, vocational rehabilitation counselors were often plac *795 ing the interests of the employer, or its workers’ compensation insurer, above the interests of their client, i.e., the injured worker. See e.g., Williams, 02-12 at 3-5, 824 So.2d at 478-75 (Thibodeaux, J., specially concurring). In many instances, vocational counselors were providing injured workers with minimal to non-existent services. E.g., Page v. Page, 98-1625, pp. 6-7 (La.App. 1 Cir. 9/24/99); 762 So.2d 18, 22; Maxie v. Brown Industries, Inc., 95-19, pp. 3-9 (La.App. 3 Cir. 5/31/95); 657 So.2d 443, 445-47, writ denied, 95-1630 (La.10/6/95); 661 So.2d 469. These abuses not only deprived injured employees of the prompt rehabilitation they were entitled to, but also subverted “the humane and salutary purposes of the Workers’ Compensation Act.” Williams, 02-12 at 3, 824 So.2d at 473.
The State argues the 2005 amendments to La.Rev.Stat. § 23:1226 addressed the “sham rehabilitation” problem by requiring vocational counselors to comply with Code of Professional Ethics for Licensed Rehabilitation Counselors (“Code of Professional Ethics”).[1] Prior to 2005, La.Rev. Stat. § 23:1226(A) provided, “[w]hen an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to |4the injury, the employee shall be entitled to prompt rehabilitation services.” In 2005, the Legislature revised this section, adding the following sentence: “[v]ocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors ...” H.B. 680, 2005 Reg. Sess. (La.2005). Additionally, the Legislature amended La. Rev.Stat. § 23:1226(B)(3)(a); this provision, which formerly provided “[t]he employer shall be responsible for the selection of a vocational counselor ...,” was amended to read, “[t]he employer shall be responsible for the selection of licensed professional vocational rehabilitation counselor.” Id.
La.Rev.Stat. §§ 23:1226(A) and (B)(3)(a) now require vocational rehabilitation counselors, who are hired to assist injured workers, to be professionally licensed. As licensed professionals, these counselors must adhere to and enforce the ethical standards contained in the Code of Professional Ethics. La. Admin Code tit. 46, § 1600(A). This Code makes clear licensed vocational counselors serve one client, the injured worker. La. Admin. *796 Code tit. 46, § 1602(A) (“The primary obligation of licensed rehabilitation counselors is to their clients ... defined as individuals with disabilities who are receiving services from licensed rehabilitation counselors(emphasis added).
Requiring employers to hire licensed vocational rehabilitation counselors was a step in the right direction toward eliminating “sham rehabilitation.” If anything, the Code of Ethics makes clear these counselors serve the interests of the injured worker — the client — not the interests of the employer or its insurer. The 2005 amendments to § 23:1226 were not, however, a cure-all for the “sham rehabilitation” problem.
| fiIn my view, this area of the law cries out for further legislative reform. The statutory scheme for providing injured workers with rehabilitation services continues to breed an irreconcilable conflict, whereby the vocational counselor is required to serve two masters with divergent interests. See Maxie, 95-19, p. 9, 657 So.2d at 447. This aspect of the statutory scheme is inherently problematic. La.Rev. Stat. § 23:1226(B)(3)(a) mandates that the employer, without input from the claimant or a neutral third party, “shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training.”[2] Under this selection process, the vocational counselor is placed in an untenable position. On the one hand, he is bound by the Code of Ethics to advance the interests of the injured worker. On the other, he is beholden to and must appease the entity responsible for hiring and paying him, i.e., the employer/insurer.
Ultimately, the unfettered discretion § 23:1226(B)(3)(a) grants employers in selecting vocational counselors impacts the quid pro quo compromise of competing interests struck by our workers’ compensation system. While the employer’s interests are advanced through the vocational counselor, whom it selects and pays, the injured worker’s interests in obtaining prompt and meaningful rehabilitation are often thwarted. Again, we cannot resolve this conflict by permitting hearing officers to impose prophylactic conditions on vocational counselors. The Legislature, however, can by allowing a neutral third party to select the vocational counselor.
Finally, I take umbrage with the practice of vocational rehabilitation counselors meeting with the employer, insurer, or their representative attorney [ ¡¡without the claimant’s attorney present. A vocational counselor — an expert hired to serve the needs of the injured worker — meeting with his client’s adversary, the employer/insurer, without the client’s attorney is patently unfair to the injured worker and detrimental to the rehabilitation process. Not surprisingly, one of the Crain Brothers conditions sought to combat this practice. 02-1342, p. 1 (La.App. 3 Cir. 4/9/03); 842 So.2d 523, 524. But this too is a practice more appropriate for the Legislature, not this Court, to address, unless this practice leads to abusive tactics. When there is record evidence of such abuse, the hearing officer can then fashion a remedy curing *797 such abuse, i.e., imposing conditions to stop it.

. House Bill 680, which contained the 2005 amendments to § 23:1226, was an omnibus bill that revised and amended numerous provisions of the Workers’ Compensation Act. H.B. 680, 2005 Reg. Sess. (La.2005). When the omnibus bill was presented to the House Labor and Industrial Relations Committee, its proponents did not specify, and the committee members did not question, the purpose behind the amendments to § 23:1226. Hearing on H.B. No. 680 Before House Comm, on Labor and Industrial Relations, 2005 Reg. Session, May, 12, 2005, available at http:// house.louisiana.gov/rmarchive/Ram/RamMay 05/LImayl2-05.ram. Thus, it is unclear whether these amendments were promulgated as a direct response to the "sham rehabilitation” problem. However, legislators are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases, and with knowledge of the effect of their acts and purpose in view. Hunter v. Morton’s Seafood Rest. & Catering, 08-1667, p. 5 (La.3/17/09); 6 So.3d 152, 155. Following this canon of statutory construction, I presume the Legislature was well aware of the case law detailing the "sham rehabilitation” problem, and that prior to 2005, §§ 23:1226(A) and (B)(3)(a) did not require vocational counselors selected to provide rehabilitation services to be “licensed professional vocational rehabilitation counselors.” Therefore, I believe the 2005 amendments were a deliberate and purposeful response by the Legislature to the "sham rehabilitation” problem.

. This provision stands in stark contrast to La.Rev.Stat. § 23:1121. La.Rev.Stat. § 23:1121(A) requires the injured employee to submit to a medical examination provided and paid for by the employer as soon after the accident as the employer demands. Thereafter, the employee is given a choice. He may select one treating physician in each specialty, but must obtain the employer's consent to change specialists after making his initial choice. La.Rev.Stat. § 23:1121(B)(1). Notably, there is no history of "sham treatment" analogous to "sham rehabilitation.”