972 So.2d 417 (2007)
Arthur SNOWTON
v.
SEWERAGE AND WATER BOARD.
No. 2007-CA-0677.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 2007.
Rehearing Denied January 23, 2008.
*418 W. Jared Vincent, Law Offices of William S. Vincent, Jr., New Orleans, LA, for Plaintiff/Appellee.
Gerard M. Victor, Special Counsel, Jacob Taranto, III, Deputy Special Counsel, Brian A. Ferrara, Attorney IV, Sewerage & Water Board of New Orleans, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge ROLAND L. BELSOME).
DAVID S. GORBATY, Judge.
The Sewerage & Water Board of New Orleans appeals a judgment of the Office of Workers' Compensation Administration. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY:
Arthur Snowton was allegedly injured on August 15, 2000, while working for the Sewerage & Water Board of New Orleans (hereinafter SWB). He was employed as a laborer and claims to have injured himself while attempting to lift a manhole cover.
Mr. Snowton was treated by Dr. Lucienne Miranne who diagnosed a L4-L5 herniation, with radiculopathy. Dr. Miranne performed a lumbar laminectomy in early October, 2002. After the surgery, Mr. Snowton was seen by Dr. Miranne's associate, Dr. Gregory Dowd, because of continued complaints of pain. Dr. Dowd recommended epidural injections and referred Mr. Snowton to Dr. Joseph Crapanzano for the injections. Because Mr. Snowton continued to complain of pain, Dr. Crapanzano referred him to the Medical Musculoskeletal Institute.
The Medical Musculoskeletal Institute is a clinic for rehabilitation of injured workers. After examination and treatment of Mr. Snowton for approximately one year, Dr. Karen Ortenburg, found Mr. Snowton capable of returning to full time work in a light/medium physical demand job.
As part of his treatment at the Medical Musculoskeletal Institute, Mr. Snowton was examined by Dr. Megan Ciota, a clinical psychologist. Mr. Snowton tested in the extremely low end of the intellectual ability range; however, Dr. Ciota was of the opinion that Mr. Snowton was exhibiting sub-maximal effort. When asked about the severity of his symptoms, Dr. Ciota opined that Mr. Snowton was exaggerating.
In February of 2003, SWB hired Heyward Johnson, a medical and vocational rehabilitation consultant, to assist Mr. Snowton in finding suitable employment. Before a job search was conducted, Joseph Shine, a physical therapist, evaluated Mr. Snowton's functional capacity and found that he was capable of working an 8 hour day in a light duty capacity, occasionally lifting up to 20 pounds, and frequently lifting up to 10 lbs. Mr. Shine also found that Mr. Snowton was demonstrating signs of symptom exaggeration and disability magnification.
*419 Beginning in January of 2004, Mr. Snowton saw Dr. Charles Murphy, an orthopedist, with whom he treated until July 2004. Dr. Murphy ordered an EMG/NCS, which confirmed the previous diagnosis of L5 radiculopathy. Dr. Murphy's report indicated that Mr. Snowton did not believe he could return to any type of work because of having "bad days." Dr. Murphy, however, was of the opinion that Mr. Snowton had reached maximum medical improvement and could return to work in a sedentary to light position. The job should not require prolonged standing or sitting in one position, nor carrying or lifting of more than 10 pounds.
In November 2006, the issues of whether Mr. Snowton could work at all and his rate of compensation were tried. The judge ruled that Mr. Snowton was no longer temporarily disabled, and that he was entitled to supplemental earnings benefits with an earnings rate of zero. Further, Mr. Snowton was entitled to a presumption of working 40 hours per week for each of the 4 weeks preceding the accident. Lastly, the judge awarded penalties and attorney fees related to the calculation of benefits and failure to pay correctly and timely.
DISCUSSION:
In its first assignment of error, SWB argues that the trial court committed manifest error in finding that Mr. Snowton was not mentally or physically capable of working at least one of the jobs identified by the vocational rehabilitation counselor. We agree.
A workers' compensation judge's finding regarding disability is a factual finding which should be given great weight and should not be overturned absent manifest error. Bolton v. Grant Parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882.
The trial court based its opinion concerning Mr. Snowton's intellectual disability on testimony from Edward Ryan, a vocational expert hired by Mr. Snowton. After meeting with Mr. Snowton the morning of trial, Mr. Ryan concluded that the claimant could work an 8 hour day if he was allowed to change positions, that is, not stand, sit, etc., for more than about 2 hours a day. Mr. Ryan also speculated that the high school diploma obtained by Mr. Snowton was somehow not legitimate. He opined that it was presented at a time when some schools gave diplomas to handicapped children who had not completed the same requirements as non-handicapped children. No evidence was submitted to substantiate this opinion.
There was conflicting evidence as to whether Mr. Snowton could read at all, but it was determined by testing, that if he could read, it was at a first-grade level at best. The trial court found that Mr. Snowton had only recently obtained a driver's license, after taking an oral examination; however, there was evidence that he previously had a driver's license, but had let it expire.
The trial court based its findings relative to Mr. Snowton's physical limitations on the report of Dr. Murphy, who found Mr. Snowton could return to a sedentary to light position.
The possible jobs identified by Mr. Johnson based on the functional capacity examination were groundskeeper for SWB, and equipment operator or office assistant, both civil service jobs. Additional jobs identified for possible employment were groundskeeper for an apartment complex, a helper in a T-shirt print shop, and a convention badge checker.
Mr. Ryan testified that Mr. Snowton could not perform any of the jobs identified, an opinion with which the trial court agreed. Mr. Ryan ascertained from a supervisor for the convention company that the badge checker job would require *420 standing for an 8 hour shift. The flier for the private groundskeeper job stated that lifting up to 40 pounds was required, and the groundskeeper for SWB would require lifting of up to 20 pounds. These requirements placed the jobs outside the work restrictions placed by Dr. Murphy. Mr. Ryan did not believe Mr. Snowton could work at the T-shirt shop because of both physical and intellectual restrictions. Without any specific knowledge of the job requirements, Mr. Ryan stated that Mr. Snowton would probably have to stand up 8 hours a day. Further, the job requirements were to take and file orders, and do inventory control. He did not believe Mr. Snowton could do any of these things because of his limited education.
Mr. Ryan did not contact anyone at civil service to determine the parameters of the jobs identified. Despite this lack of actual knowledge, he opined that the office assistant job would require some clerical work, which Mr. Snowton could not do because of his limited reading skills. He did not feel Mr. Snowton could perform as an equipment operator because he presumed this would mean operating heavy equipment.
Cynthia McGuire, the workers' compensation coordinator for SWB testified that the office assistant job might require making copies and running errands within the office. The job description did not include filing papers or typing. The equipment operator job included driving a small pick-up truck to job sites for deliveries of items loaded onto the truck by other workers. The SWB groundskeeper job would entail using a stick with a nail attached to pick up trash. Mr. Snowton could empty his bag at anytime to avoid lifting more than 10 pounds. He could also work inside the building answering the phone. Ms. McGuire testified that the supervisor of this job was more than willing to accommodate a worker's limitations.
Based on the above testimony and physical evidence, the trial judge concluded that Mr. Snowton could not work at any of the jobs identified as appropriate. Thus, she concluded that Mr. Snowton was entitled to supplemental earnings benefits at an earnings rate of zero.
Interestingly, in reasons for judgment the trial judge stated that Mr. Snowton was invited to apply for the groundskeeper job with SWB, he was not offered the job. We find this to be a distinction without a difference. All of the jobs identified as appropriate for Mr. Snowton were available at the time offered; however, the record indicates that Mr. Snowton never attempted to apply for any of the jobs. The following testimony was elicited from Mr. Snowton:
Q. Mr. Snowton, do you ever remember being offered any jobs by the Sewerage and Water Board?
A. They gave me a couple of jobs.
Q. I'm talking about after your accident.
A. I think so, but I can't remember the guy's name. He used to come by the house all the time. He tried to get me to go back to work. And I told him I got to have surgery in a few more days, but he insisted on that he's going to find me a job, though. That's all I remember about him.
* * *
Q. Okay. Do you remember any of the jobs they offered you?
A. Oh, boy. I can't remember most of them. Car wash I think, something like that. I said, "How you going to get me a job? Water Board got pools now?"
Q. Oh, no. What I meant was what jobs did the Sewerage and Water Board itself offer to you?

*421 A. What you saying now?
Q. At their premises, that you could do for them?
A. Nothing, nothing, because I couldn't do nothing for them.
Mr. Snowton recalled these visits to be before his surgery. However, Mr. Snowton's surgery was in 2002, and Mr. Johnson did not begin counseling Mr. Snowton until 2003.
The reports of Heyward Johnson offered into evidence likewise indicate that Mr. Snowton never attempted to apply for any of the jobs identified. Mr. Snowton did inquire about a civil service position as a utility plant worker; however, despite two opportunities to test for the job, Mr. Snowton did not show up either time.
All of the jobs identified by Mr. Johnson were approved by Dr. Ortenburg, who had already pronounced Mr. Snowton at maximum medical improvement. Also, at the time the jobs were offered, Mr. Snowton was deemed capable of working in a light to medium position, lifting and/or carrying up to 40 pounds. Thus, even when considering the later evaluation by Dr. Murphy, limiting Mr. Snowton to a sedentary to light position, with maximum lifting and or carrying up to 10 pounds, the groundskeeper job with SWB and the office assistant job were within the restrictions placed on Mr. Snowton's abilities.
We also note that the trial judge considered the SWB groundskeeper job to be a type of "sham rehabilitation" based on Vermilion Parish Police Jury v. Williams, 02-12 (La.App. 3d Cir.7/3/02), 824 So.2d 466, 474. The concurrence on which the trial judge relied was based on several other Third Circuit cases, which this Court has not followed, and does not choose to do so at this time.
Accordingly, we find the trial court erred in finding Mr. Snowton entitled to SEB's after he reached maximum medical improvement. Mr. Snowton was capable of working in at least two positions offered to him. Each job would have paid him more than 90 percent of his pre-accident wage. SWB is therefore entitled to a credit for all SEB's paid to Mr. Snowton.
SWB's second assignment of error is that the lower court erred in presuming Mr. Snowton worked a 40 hour week. See La.Rev.Stat. 23:1021(12)(a) provides in pertinent part:
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater, or (ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident,. . . .
The trial judge relied on Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La. 1987), in holding that Mr. Snowton was entitled to a presumption of working full 40 hour weeks for the 4 weeks preceding the accident. The record contains evidence submitted by SWB that Mr. Snowton routinely missed work without pay. In 2000, prior to the accident, he missed 18 days of work out of the 163 work days available. In 1999, he missed 35.75 days without pay, having already used his 7 sick days and 15.25 annual leave days. We find that this sufficiently rebuts the presumption provided in La.Rev.Stat. 23:1021(12)(a)(i). To find otherwise, negates the purpose of La.Rev.Stat. 23:1021(12)(a)(ii).
*422 However, our review of the record also reveals that the amount paid by SWB in TTD benefits was less than it should have been, although by a smaller amount than that found by the trial court.
Neither party disputes that Mr. Snowton was paid $6.93 per hour. According to the statute, his average weekly wage at 37.97 hours per week (applying the reduction allowed by statute), was $263.15. This is the same amount calculated by SWB. Two-thirds of $263.15 is $175.44. After deducting the $31.50 ordered by State for a child support income assignment, Mr. Snowton should have been paid $143.94. SWB paid $133.44 in TTD benefits. Accordingly, Mr. Snowton is entitled to the difference between what was actually paid and the amount he should have been paid.
SWB's last assignment of error addressed the trial court's award of penalties and attorney fees for miscalculating benefits and failure to pay them timely. La. Rev.Stat. 23:1201 F provides in pertinent part:
Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; . . .
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
We have determined that Mr. Snowton was underpaid TTD's in the approximate amount of $10.00 per week; however, we have also determined that Mr. Snowton was not entitled to SWB payments at all. Because we find that Mr. Snowton's claim was reasonably controverted, we reverse the award of penalties and attorney fees.
Accordingly, for the reasons assigned above, we reverse the judgment of the trial court and remand this matter for recalculation of benefits and credits in accordance with this opinion.
REVERSED AND REMANDED.
BELSOME, J., dissents with reasons.
BELSOME, J., dissents with reasons.
I respectfully dissent from the majority opinion.
I find that the workers' compensation judge had ample evidence from which to draw her conclusions of fact. The judge recognized Mr. Snowton's physical and mental limitations, finding him unemployable since his work related accident and subsequent surgery. One of Mr. Snowton's treating physicians, Dr. Charles Murphy's report clearly defined his physical limitations as no lifting or carrying of more than 10 pounds, no prolonged sitting, and no prolonged standing. He further found that Mr. Snowton could work approximately three hours in a day but not three consecutive hours.
The record also indicates that Mr. Snowton has an I.Q. of 59. The psychologist that tested him suggested, and the majority accepted, that he was "exhibiting sub-maximal effort" during the testing. The evidence in the record completely contradicts that possibility. Mr. Snowton testified that he attended school as a special education student and admitted to being illiterate; his employment history was limited to dishwasher, janitor, and laborer. I find, as did the workers' compensation judge, that the testimony regarding Mr. Snowton's education and employment *423 background is consistent with his I.Q. evaluation. Furthermore, the workers' compensation judge observed him at trial and did not find him to be a malingerer. Instead the judge found him to be too limited in his physical and mental capabilities to find gainful employment. That conclusion of fact is reasonable given the testimony of vocational expert, Edward Ryan coupled with Dr. Murphy's report.
If the trial court's findings are reasonable in light of the record the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). As stated by the majority, a finding of disability by a workers' compensation judge is a factual finding which should be given great weight. Bolton v. Grant parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882. Given the record as a whole the OWC judge's findings cannot be deemed manifestly erroneous. Therefore, this Court should not disturb the OWC judge's determination. Accordingly, I would affirm the judgment and amend to reflect the proper SEB calculation as set forth in the majority's opinion.